## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| U.S.A. FAB, INC. an Illinois corporation, | ) ) | |
| Plaintiff, | ) ) | **FILED: JUNE 19, 2008** |
| v. | ) ) No. | **08CV3518** |
| | ) | **JUDGE ST. EVE** |
| HARTFORD CASUALTY INSURANCE COMPANY, a foreign corporation, | ) ) | **MAGISTRATE JUDGE COX** **AEE** |
| | ) | |
| Defendant. | ) | |

### NOTICE OF REMOVAL

**NOW INTO COURT**, through undersigned counsel, comes Hartford Casualty Insurance Company ("Hartford"), which, pursuant to 28 U.S.C. §1332, 28 U.S.C. §1441(a) and in accordance with 28 U.S.C. §1446, hereby submits their Notice of Removal to remove certain litigation styled *U.S.A FAB, INC. v. Hartford Casualty Insurance Company,* No. 08 L 5344, on the docket of the Circuit Court of Cook County, Illinois, Law Division, to the United States District Court for the Northern District of Illinois, Eastern Division, and shows unto this Court as follows:

1.    On May 15, 2008, Plaintiff, U.S.A. FAB, INC, ("Plaintiff") filed a Complaint against Hartford in the Circuit Court of Cook County, Illinois, Law Division, Case No. 08 L 5344, alleging that it sustained losses in excess of $304,284.49.

2.    Plaintiff demands that Hartford pay Plaintiff for its loss in excess of $304,284.49 and alleges that Hartford has breached its duty of good faith and fair dealing by not paying the claim submitted by Plaintiff.  The amount in controversy exceeds the $75,000.00 jurisdictional minimum.

{N1667411.1}                                                          1

3.     A copy of all process, pleadings, and orders served upon Hartford in the state court action and known to Hartford to be in the state court record is attached hereto as Exhibit "A".

4.     On May 23, 2008, Plaintiff served Hartford with the Complaint via service of summons on the Illinois Department of Insurance.  Hartford received the complaint on June 2, 2008.

5.     Because this Notice of Removal has been filed within thirty (30) days of May 23, 2008, this Notice of Removal is timely filed pursuant to 28 U.S.C. §1446(b).

6.     The claim is a civil action to which this Court has original jurisdiction under 28 U.S.C. § 1332 and Hartford is entitled to remove the action to this Court pursuant to 28 U.S.C. § 1441(a) in that:

a.     Plaintiff U.S.A FAB,INC., is an Illinois corporation residing in Cook County, Illinois.

b.     Defendant Hartford, is an Indiana corporation with its principle place of business located in Hartford, Connecticut.

c.     Upon information and on belief there is diversity of citizenship between the parties; and

d.     The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     A copy of this Notice of Removal has been filed with the Clerk of Court for the Circuit Court of Cook County, Illinois, Law Division, as provided by law, and is being served upon known counsel of record for Plaintiff.  A copy of the Notice filed with the Clerk of the

Circuit Court of Cook County, Illinois, Law Division, is attached hereto as Exhibit "B".

**WHEREFORE**, Hartford Casualty Insurance Company respectfully requests that this Notice of Removal be deemed good and sufficient as required by law, that the above-captioned matter be removed from the Circuit Court of Cook County, Illinois, Law Division, to the United States District Court for the Northern District of Illinois, Eastern Division, and that this Court have and assume full and complete jurisdiction thereof issuing all necessary orders and granting all general and equitable relief to which Hartford Casualty Insurance Company is entitled, and that all further proceedings in the state court be discontinued.

Respectfully submitted,

By:   /s/ Michael A. Wax
       Peter E. Kanaris
       David E. Heiss
       Michael A. Wax
       FISHER KANARIS, P.C.
       200 South Wacker Drive, Suite 2200
       Chicago, Illinois 60606
       Tel.:   (312) 474-1400
       Fax:   (312) 474-1410
       E-Mail:  pkanaris@fisherkanaris.com
       dheiss@fisherkanaris.com
       mwax@fisherkanaris.com

# Exhibit A

# Part 1

RECEIVED
STATE OF ILLINOIS

MAY 2 3 2008
*10.30 7C*
DEPT. OF INSURANCE
CHICAGO, ILLINOIS

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____ LAW _____ DIVISION

(Name all parties)

U.S.A. FAB, INC. an Illinois Corporation,

v.

No. _____

HARTFORD CASUALTY INSURANCE COMPANY,

**SUMMONS**

Hartford Casualty Insurance Company
c/o Dept of Financial Regulation
Division of Insurance
100 W. Randolph, Suite 9-301
Chicago, Illinois 60601

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ , Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

**EXHIBIT**
A

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 00135

Name: SPINA, McGUIRE & OKAL, P.C.

Atty. for: Plaintiff

Address: 7610 W. North Avenue

City/State/Zip: Elmwood Park, Illinois 60707

Telephone: (708) 453-2800

Service by Facsimile Transmission will be accepted at:

WITNESS, _____ **MAY 15 2008** _____

_____
Clerk of Court

Date of service: _____ LLGBROWN
(To be inserted by officer on copy left with defendant or other person)

(708)    452-5088
(Area Code)    (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

RECEIVED
STATE OF ILLINOIS
MAY 2 3 2008
/0: 3 ০ 7 c
DEPT. OF INSURANCE
CHICAGO, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| U.S.A. FAB, INC. an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | LAW DEPARTMENT |
| Hartford Casualty Insurance Company, a foreign corporation, | ) | |
| | ) | JUN 0 2 08 |
| Defendant. | ) | |

RECEIVED

## COMPLAINT

NOW COMES the Plaintiff, U.S.A. FAB, INC. an Illinois corporation, by its

attorneys, Spina, McGuire & Okal, P.C. and complaining of the Defendant HARTFORD

CASUALTY INSURANCE COMPANY, states as follows:

1.    Plaintiff U.S.A. FAB, INC. was, at all times pertinent, a corporation duly

created under the laws of the State of Illinois and engaged in business at 501 W.

Algonquin Road in Mount Prospect, Cook County, Illinois.

2.    Defendant HARTFORD CASUALTY INSURANCE COMPANY is not, and

was at all times pertinent, a foreign corporation authorized to engage in the insurance

business in the State of Illinois with offices located in Naperville, Illinois and who has

designated the Illinois Department of Financial & Professional Regulation, Division of

Insurance in Chicago, Cook County, Illinois to accept service of process.

3.    On or about May 5, 2005, in consideration of premiums then paid to it by

Plaintiff, Defendant made, executed and delivered to Plaintiff a certain Hartford

Spectrum Business Insurance Policy under Policy Number 83 SBA PP9791 SA insuring

the Plaintiff, among other things, from loss to business property and income for

amounts up to Six Hundred Forty-Five Thousand ($645,000.00) Dollars.  A copy of that portion of Policy No. 83 SBA PP9791 SA pertaining to the coverages concerning loss to business property and income is attached hereto as **Exhibit "A"**.

4.      On or about July 21, 2005, while the foregoing policy was in full force and effect and while Plaintiff was so insured by Defendant, the Plaintiff suffered an explosion at its business premises in Mount Prospect, Illinois  which did not happen or take place by means of any intentional act of the plaintiff or anyone on its behalf.  As a result of this explosion, the Plaintiff sustained damages in an amount estimated to be at least $304,284.49.

5.      Plaintiff gave the Defendant due and timely notice of the loss and further submitted Sworn Statement In Proof Of Loss on December 20, 2005 through its Licensed Public Adjuster, Musick Loss Management, Inc.  A copy of the correspondence sent to Defendant by Musick Loss Management, Inc on behalf of the Plaintiff with enclosures including the Sworn Statement In Proof Of Loss executed by Paolo Giovagnoli on behalf of the Plaintiff is attached hereto as **Exhibit "B"**.

6.      Plaintiff duly kept and performed all the policy's terms and conditions on its part to be kept and performed and it thereupon became the duty of the Defendant HARTFORD CASUALTY INSURANCE COMPANY to timely pay the Plaintiff for those losses incurred by the Plaintiff as a result of the explosion at its business premises.

7.      On April 11, 2008 the law offices of Heytow & Warnick, P.C. located at 111 West Washington Street in Chicago, Cook County, Illinois mailed, via Certified Mail and regular mail, a certain letter dated April 11, 2008 purportedly executed on behalf of the Defendant for the purpose of notifying Plaintiff's counsel that Defendant was denying all coverage for the loss based upon various false accusations that, among

2

other things, Plaintiff concealed, made material misrepresentations or committed fraud in the Sworn Statement In Proof Of Loss concerning the cause and origin of the loss and the circumstances of the loss as well as false accusations that Plaintiff failed to comply with the terms of the policy regarding an examination under oath and the submission of books and records. A copy of said correspondence is attached hereto as Exhibit "C".

8.      Although requested to do so, Defendant has failed and refused and still fails and refuses, to pay the amount of the loss, or any part of the loss, to the Plaintiff.

9.      That the conduct of the Defendant HARTFORD CASUALTY INSURANCE COMPANY, under the circumstances of this case, has been vexatious and unreasonable. Plaintiff is, therefore, entitled to an award of reasonable attorney fees, court costs and additional compensation pursuant to Section 155(1) of the Illinois Insurance Code.

WHEREFORE, Plaintiff U.S.A. FAB, INC. prays this Honorable Court for entry of judgment against the Defendant for damages resulting from the explosion occurring on July 21, 2005 in an amount not less than Three Hundred Thousand Two Hundred Eighty Four and 49/100 ($304.284.40) Dollars plus his costs of suit herein, together with such further relief under Section 155(1) of the Illinois Insurance Code as this Court should deem equitable and just.

SPINA, McGUIRE & OKAL, P.C.

By_____
     Timothy H. Okal

SPINA, McGUIRE & OKAL, P.C.
7610 W. North Avenue
Elmwood Park, Illinois 60707
(708) 453-2800
Attorney I.D. No. 00135

3

# Hartford Spectrum

Business Insurance Policy



EXHIBIT

A

J1
97
PP
SBA

This Spectrum Policy consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the insurance company of The Hartford Insurance Group shown below.

**INSURER:** HARTFORD CASUALTY INSURANCE COMPANY
HARTFORD PLAZA, HARTFORD, CT 06115
**COMPANY CODE:** 3

**Policy Number:** 83 SBA PP9791 SA

THE
HARTFORD

## SPECTRUM POLICY DECLARATIONS          COPY

05010

*0100083PP97910101*

**Named Insured and Mailing Address:**          U.S.A. FAB, INC.
(No., Street, Town, State, Zip Code)

501 W. ALGONQUIN RD., UNIT B
MOUNT PROSPECT     IL   60056

**Policy Period:**          From     05/06/05     To     05/06/06     1     YEAR
12:01 a.m., Standard time at your mailing address shown above. Exception: 12 noon in Maine, Michigan, New Hampshire, North Carolina.

**Name of Agent/Broker:** ROLAND J FISCHER & ASSOCIATES, INC
**Code:** 510657

**Previous Policy Number:** 83 SBA PP9791

**Named Insured Is:** CORPORATION

**Audit Period:** ANNUAL

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

---

**TOTAL ANNUAL PREMIUM IS:**          $7,946
IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE HARTFORD, YOUR POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT.

Countersigned by _____

Authorized Representative          Date

Form SS 00 02 11 93 T  Printed in U.S.A. (NS)
Process Date: 02/22/05

Page 001 (CONTINUED ON NEXT PAGE)
Policy Expiration Date: 05/06/06

## SPECTRUM POLICY DECLARATIONS  (Continued)
POLICY NUMBER: 83 SBA PP9791

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 001       Building: 001

501 W. ALGONQUIN ROAD
MOUNT PROSPECT     IL  60056

**Description of Business:**
METAL JOB SHOP - COMPONENT PARTS ONLY

Deductible:  $1,000 PER OCCURRENCE

BUILDING AND BUSINESS PERSONAL PROPERTY      LIMITS OF INSURANCE

BUILDING

                                           NO COVERAGE

BUSINESS PERSONAL PROPERTY

   REPLACEMENT COST                    $    543,300

PERSONAL PROPERTY OF OTHERS

   REPLACEMENT COST                    $     10,800

MONEY AND SECURITIES

   INSIDE THE PREMISES                 $    10,000
   OUTSIDE THE PREMISES                $     5,000

SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 83 SBA PP9791

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 001          Building: 001

PROPERTY OPTIONAL COVERAGES APPLICABLE          LIMITS OF INSURANCE
          TO THIS LOCATION

MANUFACTURERS STRETCH
FORM: SS 04 28
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

LIMITED FUNGI, BACTERIA OR VIRUS          $    50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:          30 DAYS

SPECTRUM POLICY DECLARATIONS  (Continued)
POLICY NUMBER: 83 SBA PP9791

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 002      Building: 001

10208 FRANKLIN AVE
FRANKLIN PARK      IL 60131

Description of Business:
WAREHOUSE LOCATION - INSURED'S OWN STOCK - MANUFACTURERS PROGRAM

Deductible: $1,000 PER OCCURRENCE

BUILDING AND BUSINESS PERSONAL PROPERTY      LIMITS OF INSURANCE          .

  BUILDING

    REPLACEMENT COST                          $    635,800

  BUSINESS PERSONAL PROPERTY

    REPLACEMENT COST                          NO COVERAGE

  PERSONAL PROPERTY OF OTHERS

    REPLACEMENT COST                          NO COVERAGE

  MONEY AND SECURITIES

    INSIDE THE PREMISES                       $    10,000
    OUTSIDE THE PREMISES                      $     5,000

SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 83 SBA PP9791

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 002          Building: 001

PROPERTY OPTIONAL COVERAGES APPLICABLE     LIMITS OF INSURANCE
   TO THIS LOCATION

LIMITED FUNGI, BACTERIA OR VIRUS          $    50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:                     30 DAYS

SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 83 SBA PP9791

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS | LIMITS OF INSURANCE |
|---|---|
| ACTUAL LOSS SUSTAINED BUSINESS INCOME & EXTRA EXPENSE - SPECIFIED LIMIT COVERAGE:     FORM SS 40 60 | $   645,000 |
| TOTAL POLICY SALES: | $     992,750 |

EQUIPMENT BREAKDOWN COVERAGE
  COVERAGE FOR DIRECT PHYSICAL LOSS
  DUE TO:
    MECHANICAL BREAKDOWN,
    ARTIFICIALLY GENERATED CURRENT
    AND STEAM EXPLOSION

| THIS ADDITIONAL COVERAGE INCLUDES THE FOLLOWING EXTENSIONS | |
|---|---|
|   HAZARDOUS SUBSTANCES         : | $    25,000 |
|   CFC REFRIGERANTS | $    25,000 |

MECHANICAL BREAKDOWN COVERAGE ONLY
APPLIES WHEN BUILDING OR BUSINESS
PERSONAL PROPERTY IS SELECTED ON
THE POLICY

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: 83 SBA PP9791

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| LIABILITY AND MEDICAL EXPENSES | $1,000,000 |
| MEDICAL EXPENSES - ANY ONE PERSON | $    10,000 |
| PERSONAL AND ADVERTISING INJURY | $1,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU<br>ANY ONE PREMISES | $   300,000 |
| AGGREGATE LIMITS<br>    PRODUCTS-COMPLETED OPERATIONS | $2,000,000 |
| GENERAL AGGREGATE | $2,000,000 |
| EMPLOYMENT PRACTICES LIABILITY<br>COVERAGE: FORM SS 09 01 | |
| EACH CLAIM LIMIT | $     5,000 |
| DEDUCTIBLE - EACH CLAIM LIMIT<br>NOT APPLICABLE | |
| AGGREGATE LIMIT | $     5,000 |

RETROACTIVE DATE: 05062004

This Employment Practices Liability Coverage contains claims made coverage. Except as may be otherwise provided herein, specified coverages of this insurance are limited generally to liability for injuries for which claims are first made against the insured while the insurance is in force. Please read and review the insurance carefully and discuss the coverage with your Hartford Agent or Broker.

The Limits of Insurance stated in this Declarations will be reduced, and may be completely exhausted, by the payment of "defense expense" and, in such event, The Company will not be obligated to pay any further "defense expense" or sums which the insured is or may become legally obligated to pay as "damages".

BUSINESS LIABILITY OPTIONAL
COVERAGES

UMBRELLA LIABILITY - SEE
SCHEDULE ATTACHED

05013

*010083PP97910101

SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 83 SBA PP9791

Form Numbers of Forms and Endorsements that apply:

| | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS | 00 | 01 | 04 | 93 | SS | 00 | 05 | 06 | 96 | SS | 00 | 07 | 10 | 02 | SS | 00 | 08 | 04 | 01 |
| SS | 00 | 38 | 04 | 04 | SS | 84 | 08 | 03 | 00 | SS | 00 | 20 | 07 | 04 | SS | 01 | 23 | 03 | 92 |
| SS | 01 | 63 | 03 | 00 | SS | 04 | 19 | 06 | 96 | SS | 04 | 28 | 09 | 01 | SS | 04 | 30 | 03 | 00 |
| SS | 04 | 39 | 10 | 02 | SS | 04 | 41 | 04 | 01 | SS | 04 | 42 | 03 | 00 | SS | 04 | 44 | 09 | 93 |
| SS | 04 | 45 | 10 | 96 | SS | 04 | 46 | 10 | 02 | SS | 04 | 47 | 10 | 02 | SS | 04 | 80 | 03 | 00 |
| SS | 04 | 86 | 03 | 00 | IH | 10 | 01 | 09 | 86 | SS | 05 | 12 | 03 | 92 | SS | 05 | 18 | 07 | 92 |
| SS | 05 | 47 | 09 | 01 | SS | 83 | 82 | 09 | 03 | SS | 09 | 01 | 09 | 00 | SS | 09 | 06 | 06 | 01 |
| SS | 09 | 42 | 07 | 99 | SS | 40 | 18 | 03 | 00 | SS | 40 | 60 | 10 | 02 | SS | 40 | 93 | 10 | 02 |
| SS | 50 | 04 | 06 | 04 | SS | 50 | 19 | 06 | 03 | SS | 50 | 30 | 06 | 03 | SX | 80 | 01 | 06 | 97 |
| SS | 83 | 76 | 06 | 03 | | | | | | | | | | | | | | | |

# COMMON POLICY CONDITIONS

Form SS 00 05 06 96  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996

## QUICK REFERENCE - SPECTRUM POLICY

### DECLARATIONS
### and
### COMMON POLICY CONDITIONS

## I.   DECLARATIONS

Named Insured and Mailing Address
Policy Period
Description and Business Location
Coverages and Limits of Insurance

## II.   COMMON POLICY CONDITIONS

Beginning on Page

| | | |
|---|---|---|
| A. | CANCELLATION | 1 |
| B. | CHANGES | 1 |
| C. | CONCEALMENT, MISREPRESENTATION OR FRAUD | 2 |
| D. | EXAMINATION OF YOUR BOOKS AND RECORDS | 2 |
| E. | INSPECTIONS AND SURVEYS | 2 |
| F. | INSURANCE UNDER TWO OR MORE COVERAGES | 2 |
| G. | LIBERALIZATION | 2 |
| H. | OTHER INSURANCE - PROPERTY COVERAGE | 2 |
| I. | OTHER INSURANCE - BUSINESS LIABILITY | 2 |
| J. | PREMIUMS | 3 |
| K. | TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US | 3 |
| L. | TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY | 4 |
| M. | SUSPENSION IN COVERAGE | 4 |

Form SS 00 05 06 96  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996



# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

      Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for, within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. If the first Named Insured cancels this policy, we will retain no less than $100 of the premium.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized on behalf of all insureds to agree with us on changes in the terms of this policy. If the terms

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

## D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

## E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. Such inspections are not safety inspections. We do not undertake any duty to provide for the health or safety of any person. And we do not represent or warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

## F. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## H. OTHER INSURANCE - PROPERTY COVERAGE

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## I. OTHER INSURANCE - BUSINESS LIABILITY

If other valid and collectible insurance is available to the insured for a loss we cover under Business Liability Coverage Form, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or
(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of the Business Liability Coverage Form.

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Copyright, Hartford Fire Insurance Company, 1996

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

  c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## J. PREMIUMS

1. The first Named Insured shown in the Declarations:

  a. Is responsible for the payment of all premiums; and

  b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

  a. Paid to us prior to the anniversary date; and

  b. Determined in accordance with paragraph 2. above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1. Applicable to Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

  a. Prior to a loss to your Covered Property.

  b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

    (1) Someone insured by this insurance;

    (2) A business firm:

      (a) Owned or controlled by you; or

      (b) That owns or controls you; or

    (3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers. This will not restrict your insurance.

2. Applicable to Business Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

## L. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## M. SUSPENSION IN COVERAGE

This provision is applicable only to the Equipment Breakdown Additional Coverage in the Special Property Coverage Form.

Suspension

When any equipment covered by the Equipment Breakdown Additional Coverage is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance provided by the Equipment Breakdown Additional Coverage against loss or damage to that equipment.

We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us. If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

Our President and Secretary have signed this policy. The Declarations page has also been countersigned by our duly authorized agent.

Brian S. Becker, Secretary

David Zwiener, President

Form SS 00 05 06 96  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996

# SPECIAL PROPERTY COVERAGE FORM

© 2002, The Hartford

# QUICK REFERENCE

## SPECIAL PROPERTY COVERAGE FORM
## READ YOUR POLICY CAREFULLY

| SPECIAL PROPERTY COVERAGE FORM | Beginning on Page |
|---|---|
| **A. COVERAGES** | 1 |
| Covered Property | 1 |
| Property Not Covered | 1 |
| Covered Causes of Loss | 2 |
| Limitations | 2 |
| Additional Coverages | 3 |
| Coverage Extensions | 11 |
| **B. EXCLUSIONS** | 13 |
| **C. LIMITS OF INSURANCE** | 15 |
| **D. DEDUCTIBLES** | 16 |
| **E. PROPERTY LOSS CONDITIONS** | 17 |
| Abandonment | 17 |
| Appraisal | 17 |
| Duties in the Event of Loss or Damage | 17 |
| Legal Action Against Us | 17 |
| Loss Payment | 17 |
| Recovered Property | 19 |
| Resumption of Operations | 19 |
| Vacancy | 19 |
| **F. PROPERTY GENERAL CONDITIONS** | 20 |
| Control of Property | 20 |
| Mortgage Holders | 20 |
| No Benefit to Bailee | 20 |
| Policy Period, Coverage Territory | 20 |
| **G. PROPERTY DEFINITIONS** | 21 |

© 2002, The Hartford

# SPECIAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the SECTION G - PROPERTY DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations:

a. Buildings, meaning only building(s) and structure(s) described in the Declarations, including:

(1) Completed additions;

(2) Permanently installed:

(a) Fixtures;

(b) Machinery; and

(c) Equipment;

(3) Outdoor fixtures;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Building Glass, meaning glass that is part of a building or structure;

(6) Personal property owned by you that is used to maintain or service the buildings or structures on the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(7) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "scheduled premises", used for making additions, alterations or repairs to the buildings or structures.

b. Business Personal Property located in or on the building(s) described in the Declarations at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", including:

(1) Property you own that is used in your business;

(2) Tools and equipment owned by your employees, which are used in your business operations.

(3) Property of others that is in your care, custody or control.

(4) Your use interest in tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove.

(5) Leased personal property for which you have contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

### 2. Property Not Covered

Covered Property does not include:

a. Aircraft, automobiles, motor trucks and other vehicles subject to motor vehicle registration;

Form SS 00 07 10 02

SPECIAL PROPERTY COVERAGE FORM

b. Currency, "money," bullion, numismatic and philatelic property and bank notes or "securities" except as provided in the Additional Coverages or Optional Coverages. Lottery tickets held for sale and postage stamps in current use and having face value are not "securities".

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas, including their lead in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other then those held for sale or sold but not delivered, all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. The cost to research, replace or restore the information on "valuable papers and records", except as provided in the Coverage Extensions or Optional Coverages.

h. "Data" and "software" which exists on electronic "media" including the cost to research, replace or restore them, except as provided in the Additional Coverages or Optional Coverages.

g. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy.

3. Covered Causes of Loss

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a. Excluded in Section B., EXCLUSIONS; or

b. Limited in Paragraph A.4. Limitations; that follow.

4. Limitations

a. We will not pay for loss of or damage to:

(1) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does apply to the Additional Coverage for "Money" and "Securities".

(2) Property that has been transferred to a person or to a place outside the "scheduled premises" on the basis of unauthorized instructions.

(3) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

b. Pets and animals are covered only if:

(1) They are inside the building; and

(2) They are owned by others and boarded by you, or owned by you and held for sale or sold but not delivered.

And then we will pay only if they are killed, or their destruction is made necessary by any of the "specified causes of loss" or they are stolen.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur;

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item; and

(3) $2,500 for patterns, dies, molds and forms.

(4) $500 for stamps, lottery tickets held for sale and letters of credit.

d. Unless specifically provided under a separate endorsement and with a specific Limit of Insurance indicated in the Declarations, we will not pay for loss or damage to "perishable stock" caused by or resulting from:

(1) A change in temperature or humidity resulting from"

(a) Mechanical breakdown or failure of:

(i) Stationary heating plants; or

© 2002, The Hartford

(ii) Refrigerating, cooling, or humidity control apparatus or equipment;

(b) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires; or

(c) Complete or partial failure or electric power on your "scheduled premises".

(2) Contamination by refrigerant.

5. **Additional Coverages**

a. **Accounts Receivable**

(1) This additional coverage applies only when a Limit of Insurance for Business Personal Property is shown in the Declarations.

We will pay up to $10,000 in any one occurrence, to cover:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss of or damage to your records of accounts receivable at the "scheduled premises".

(2) Paragraph A.3., Covered Causes of Loss, and Section B., Exclusions, do not apply to this Additional Coverage except for:

(a) Paragraph B.1.c., Governmental Action;

(b) Paragraph B.1.d., Nuclear Hazard; and

(c) Paragraph B.1.f., War and Military Action.

(3) Additional Exclusions

(a) Dishonest acts by you, anyone else with an interest in the records of accounts receivable, or your or their employees or authorized representatives, or anyone

entrusted with the records of accounts receivable, whether or not acting alone or in collusion with other persons or occurring during the hours of employment.

But this exclusion does not apply to a carrier for hire.

(b) Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money," "securities," or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(c) Bookkeeping, accounting or billing errors or omissions.

(d) Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct loss or damage caused by lightning.

(e) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(f) Unauthorized instructions to transfer property to any person or to any place.

(4) We will not pay for loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

b. **Collapse**

(1) With respect to Buildings:

(a) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building cannot be occupied for its intended purpose;

(b) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

(c) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

(d) A building that is standing or any part of a building that is standing is

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

(2) We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

(a) The "specified causes of loss" or breakage of building glass, all only as insured against in this policy;

(b) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(c) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(d) Weight of people or personal property;

(e) Weight of rain that collects on a roof; and

(f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

(3) We will not pay for loss of or damage to the following types of property, if otherwise covered in this policy, under items (b), (c) (d), (e) and (f) unless the loss or damage is a direct result of the collapse of a building:

awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

The criteria set forth in Paragraphs (1)(a) through (2)(a) do not limit the coverage otherwise provided under this Additional Coverage for the Causes of Loss listed in Paragraph (2)(a), (2)(d), and (2)(e)

(4) If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if

(a) the collapse was caused by a cause of loss listed in Paragraph (2)(a) through (2)(f) of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph (3) above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph (4) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(5) This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this policy.

c. Debris Removal

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

(3) This Additional Coverage does not apply to costs to:

(a) Extract "pollutants" from land; or

(b) Remove, restore or replace polluted land or water.

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

#### d. Equipment Breakdown

We will pay for loss or damage caused by or resulting from risks of direct physical loss due to:

(1) Mechanical Breakdown, including rupture or bursting caused by centrifugal force.

(2) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

(3) Explosion of steam boilers, steam piping, steam engines or steam turbines owned or leased by you, or operated under your control.

(4) Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such boilers or equipment.

(5) Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

Coverage Limitation

The following coverage limitation applies only to loss or damage caused by or resulting from (1) through (5) above:

Hazardous Substances

We will pay for the cost, not to exceed $25,000, to repair or replace Covered Property because of contamination by a hazardous substance. This includes the expenses to clean up or dispose of such property. Hazardous substance means any substance other than ammonia that has been declared by a government agency to be hazardous to health.

Cost in this limitation means those beyond what would have been required had no hazardous substance been involved.

This limit is part of and not in addition to the limits of Insurance for Covered Property.

Coverage Extensions

The following coverage extension applies only to loss or damage caused by or resulting from (1) through (5) above:

(1) CFC Refrigerants

We will pay for the additional costs, up to $25,000, to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances.

This means the additional expense to do the least expensive of the following:

(a) Repair the damaged property and replace any lost CFC refrigerant;

(b) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(c) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

(2) Defense

If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control directly caused by Equipment Breakdown we will either:

(a) Settle the claim or "suit"; or

(b) Defend you against the claim or "suit," but keep for ourselves the right to settle it at any point.

(3) Supplementary Payments

We will pay, with respect to any claim or "suit" we defend:

(a) All expenses we incur;

(b) The cost of bonds to release attachments, but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds;

(c) All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $100 a day because of time off from work;

(d) All costs taxed against you in any "suit" we defend;

(e) Prejudgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

(f) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations.

These payments will not reduce the Limit of Insurance shown in the Declarations.

(4) **Business Income and Extra Expense Extension**

The Business Income and Extra Expense Additional Coverage is extended to provide coverage for a tenant who has a loss of income from the lack of heating, cooling or power as a result of equipment breakdown to mechanical, electrical or pressure equipment of the building owner.

**Additional Condition**

Bankruptcy

The bankruptcy or insolvency of you or your estate will not relieve us of any obligation under this Additional Coverage.

Additional Definition "Suit" means a civil proceeding and includes:

(1) An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

(2) Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

Jurisdictional Inspections:

If any boiler or pressure vessel requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

e. **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $15,000 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

f. **Fire Extinguisher Recharge**

We will pay to cover your expenses for recharge of your hand fire extinguishers when they are emptied while fighting fire.

g. **Forgery**

(1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent. This includes written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee" for business purposes.

(2) If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable expenses that you incur and pay in that defense.

(3) We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(a) Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

(b) Counterfeit United States or Canadian paper currency.

(1) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $5,000, unless a higher Limit of Insurance is shown in the Declarations.

h. **Glass Expense**

We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing replacing window displays.

i. **Increased Cost of Construction**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in paragraphs (3) through (9) of this Additional Coverage.

(3) The ordinance or law referred to in Paragraph (2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with

(5) Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(6) The most we will pay under this Additional Coverage, for each described building insured under this policy, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage for each damaged building is $10,000.

The amount payable under this Additional Coverage is additional Insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as possible after the loss or damage, not to exceed two years. We may extend this

period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such terms would conflict with the provisions of this Additional Coverage.

(9) The Costs addressed in the Loss Payment Property Loss Condition do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph (6) of this Additional Coverage, is not subject to such limitation.

j.  Lock and Key Replacement

We will pay up to $1,000 in any one occurrence for the re-keying of locks or the repair or replacement of locks at "scheduled premises" following the theft or the attempted theft of keys by burglars.

k.  Money and Securities

(1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

(a) Theft, meaning any act of stealing;

(b) Disappearance; or

(c) Destruction.

(2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(a) Resulting from accounting or arithmetical errors or omissions;

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

(b) Due to the giving or surrendering of property in any exchange or purchase; or

(c) Of property contained in any "money"-operated device unless a continuous recording instrument in the device records the amount of "money" deposited in it.

(3) The most we will pay for loss in any one occurrence is:

(a) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

(i) In or on the "scheduled premises"; or

(ii) Within a bank or savings institution; and

(b) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

(4) All loss:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

l.  Pollutant Clean Up and Removal

We will pay your expense to extract "pollutants" from land or water at the "scheduled premises" if the discharge, dispersal, seepage, migration, release or escape of the 'pollutants' is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(1) The date of direct physical loss or damage; or

(2) The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

m.  Preservation of Property

If it is necessary to move Covered Property from the "scheduled premises" to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 10 days after the property is first moved.

n.  Theft Damage to Building

This Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will pay for loss or damage directly resulting from theft, burglary or robbery (except loss by fire or explosion) to a building:

(1) You occupy, including personal property that is used to maintain or service the building; or

(2) Containing covered personal property if you are legally liable for such loss or damage.

But we will not pay for such loss of or damage to property that is away from the "scheduled premises".

o.  Water Damage, Other Liquid, Powder or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage except as provided in the Equipment Breakdown Additional Coverage. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

p.  Business Income

We will pay for the actual loss of Business Income you sustain due to the necessary

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from any Covered Cause of Loss.

We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

Business Income means the:

(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

(2) Continuing normal operating expenses incurred, including payroll.

q. Extra Expense

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

Extra Expense means expense incurred:

(1) To avoid or minimize the suspension of business and to continue "operations":

(a) At the "scheduled premises"; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

(2) To minimize the suspension of business if you cannot continue "operations".

(3) (a) To repair or replace any property; or

(b) To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage k., Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

Limitation:   This Extra Expense Coverage does not apply to:

(1) Any deficiencies in insuring building or business personal property; or

(2) Any expense related to any recall of products you manufacture, handle or distribute.

r. Civil Authority

(1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "Scheduled Premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "Scheduled Premises".

(2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:

(a) When access is permitted to your "Scheduled Premises"; or

(b) 30 consecutive days after the order of the civil authority.

s. Extended Business Income

(1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

Ends on the earlier of:

(a) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in (1)(a) above.

Loss of Business Income must be caused by direct physical loss or damage at the "scheduled premises" caused by or resulting from any Covered Cause of Loss.

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

(2) With respect to the coverage provided in this Additional Coverage, suspension means:

  (a) The partial slowdown or complete cessation of your business activities; and

  (b) That a part or all of the "scheduled premises" is rendered untenantable as a result of a covered cause of loss.

t. **Business Income to Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume"operations", in whole or in part, by using any other available:

  (a) Source of Materials; or

  (b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent Property means property owned by others whom you depend on to:

  (a) Deliver materials or services to you or to others for your account. But services does not include:

    (i) Water, communication, or power services; or

    (ii) Any type of web site, communication or Internet service.

  (b) Accept your products or services;

  (c) Manufacture your products for delivery to your customers under contract for sale; or

  (d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) The coverage period for Business Income under this Additional Coverage:

  (a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

  (b) Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(6) The Business Income coverage period, as stated in Paragraph (5), does not include any increased period required due to the enforcement of any ordinance or law that:

  (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

  (b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects "pollutants."

(7) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

u. **Tenant Glass**

The Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will cover loss to glass, which is in your care, custody or control and for which the lease holds you responsible. The glass must be part of a building described in the Declarations or at a location that would be included in Coverage Extension b. Newly Acquired or Constructed Property.

The most that we will pay for each location under this Additional Coverage is $25,000.

v. **Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant, and you

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

cannot legally remove Tenant Improvements and Betterments we will extend Business Personal Property coverage to apply to the unamortized value of Tenants Improvement and Betterment that remains and you were forced to abandon.

The most we will pay in any one occurrence for loss under this Additional Coverage is $25,000.

w.  **Lease Assessment**

Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical damage caused by or resulting from a Covered Cause of Loss to building property as agreed to in your written lease agreement.

We will pay no more than $2,500 in any one occurrence for this Additional Coverage.

6.  **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises".

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows:

a.  **Arson Reward**

In the event that a covered fire loss was the result of an act of arson, we will reimburse you up to $10,000 for rewards you pay for information leading to convictions for that act of arson.

This is additional insurance. The deductible does not apply to these reimbursements.

b.  **Data and Software**

We will pay up to $10,000 in any one occurrence to cover your costs to research, replace or restore "data" or "software" which exists or existed on electronic or magnetic "media" that is lost or damaged as a result of direct physical loss or damage to "computer equipment" at the "scheduled premises".

c.  **Garages, Storage Buildings and Other Appurtenant Structures**

You may extend the insurance that applies to Building to apply to garages, storage buildings and other appurtenant structures, except outdoor fixtures and paved surfaces, at the "scheduled premises".

The most we will pay for loss or damage under this Extension is 10% of the Limits of Insurance for Building shown in the Declarations but not more than $50,000 at each "scheduled premises".

You may extend the insurance that applies to Business Personal Property in garages, storage buildings and other appurtenant structures at the "scheduled premises".

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Business Personal Property shown in the Declarations but not more than $5,000 at each "scheduled premises".

d.  **Newly Acquired or Constructed Property**

(1)  You may extend the insurance that applies to Building to apply to:

(a)  Your new buildings while being built on the "scheduled premises"; and

(b)  Buildings you acquire at locations other than the "scheduled premises", intended for:

(i)  similar use as the Building described in the Declarations; or

(ii)  Use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $500,000 at each premises.

(2)  You may extend the insurance that applies to Business Personal Property to apply to:

(a)  property at any premises you acquire or construct;

(b)  Business Personal Property, including such property that you newly acquire, located at your newly constructed building, or

(c)  Business Personal Property that you newly acquire, located at the "scheduled premises".

This extension does not apply to:

(a)  Personal Property that you temporarily acquire in the course of installing or performing work on such property;

(b)  Personal property of others that you temporarily acquire in the course of your wholesaling activity.

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

The most we will pay for loss or damage under this Extension is $250,000 at each premises.

(3) You may extend the insurance that applies to Business Income and Extra Expense to apply to newly acquired or constructed locations.

The most we will pay under this Extension is $50,000.

(4) If Covered Property is moved to a new premises endorsed onto this policy, from a "scheduled premises" being endorsed off this policy, the Limit of Insurance applicable to that vacated premises will apply proportionately to both premises as the property is moved. This coverage applies to up to 90 days after the move begins or upon completion of the move, whichever is sooner.

(5) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

(a) This policy expires;

(b) 90 days after you acquire or begin to construct the property, or

(c) You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

e. **Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor:

(1) Fences, signs (other than signs attached to buildings), trees, shrubs and plants including debris removal expense, caused by or resulting from any of the following causes of loss:

(a) Fire;

(b) Lightning;

(c) Explosion;

(d) Riot or Civil Commotion; and

(e) Aircraft.

The most we will pay for loss or damage under this Extension is $10,000 but not more than $1,000 for any one tree, shrub or plant.

(2) Radio and television antennas (including satellite dishes) including debris removal expense, caused by or resulting from any of the following causes of loss:

(a) Fire;

(b) Lightning;

(c) Windstorm;

(d) Ice, Snow, Sleet or Hail;

(e) Explosion;

(f) Riot or Civil Commotion; and

(g) Aircraft.

The most we will pay for loss or damage under this Extension is $2,000.

f. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners, or your employees.

The most we will pay for loss or damage under this Extension is $2,500 at each "scheduled premises".

g. **Property Off Premises**

(1) You may extend the insurance that applies to Building to apply to such property that is temporarily at a location you do not own, lease or operate. This Extension applies only if loss or damage is caused by a Covered Cause of Loss. This Extension does not apply to property in course of transit.

The most we will pay under this is $5,000.

(2) You may extend the insurance that applies to Business Personal Property to apply to such property, other than "money" and "securities" while:

(a) In the course of transit and more than 1,000 feet from the "scheduled premises". Property must be in or on, but not permanently attached or installed in, a motor vehicle you own, lease or operate while between points in the coverage territory; or

(b) Temporarily at a premises you do not own, lease or operate.

(c) At a premises owned, leased, operated or used by you and the Business Personal Property is a vending machine.

(d) In or on, but not permanently attached to or installed in, motor vehicles operated by your employees in the course of your business operations.

(e) On temporary public display, or while being used at fairs, exhibitions, expositions, or trade

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

shows or while in transit to and from these temporary sites.

The most we will pay under this Extension is $2,500.

h. Valuable Papers and Records - Cost of Research

You may extend the insurance that applies to Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged "valuable papers and records", for which duplicates do not exist. The most we will pay under this Extension is $10,000 at each "scheduled premises". For "valuable papers and records" not at the "scheduled premises", the most we will pay is $5,000.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. Ordinance or Law

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   except as otherwise provided under the Additional Coverage A.5.h., Increased Cost of Construction

   b. Earth Movement

   (1) Earthquake, including any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.  Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

   But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay

for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if loss or damage by fire or volcanic action results, we will pay for that resulting damage.

   Volcanic action means direct loss or damage resulting from the eruption of a volcanic when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust, or particulate matter; or

   (c) Lava flow.

   (d) All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust, or particulate matter. That does not cause direct physical loss or damage to Covered Property.

   c. Governmental Action

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

   d. Nuclear Hazard

   Nuclear reaction or radiation, or radioactive contamination however caused.

   But if loss or damage by fire results, we will pay for that resulting loss or damage.

   e. Power Failure

   The failure of power or other utility service supplied to the "scheduled premises", however caused, if the failure occurs away from the "scheduled premises".  Failure includes lack of sufficient capacity and reduction in supply necessary to maintain normal operations.

   But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

   f. War and Military Action

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g.  Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mud flow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

h.  Neglect

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

2.  We will not pay for loss or damage caused by or resulting from:

a.  Consequential Losses: Delay, loss of use or loss of market.

b   Smoke, Vapor, Gas: Smoke, vapor or gas from agricultural smudging or industrial operations.

c.  Miscellaneous Types of Loss:

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, mold, spore or other animals;

(6) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

d.  Frozen Plumbing: Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

e.  Dishonesty: Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

f.  False Pretense: Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g.  Exposed Property: Rain, snow, ice or sleet to personal property in the open, except as provided in the Coverage Extension for Outdoor Property.

h.  Collapse: Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the "scheduled premises", we will pay for that resulting loss or damage.

i.  Pollution: We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss"

© 2002, The Hartford

results, we will pay for the resulting loss or damage caused by the "specified cause of loss."

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

   a. **Weather conditions:** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

   b. **Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c. **Negligent Work:** Faulty, inadequate or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or

      (4) Maintenance of part or all of any property on or off the "scheduled premises".

4. **Business Income and Extra Expense Exclusions.** We will not pay for:

   a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

      (1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

      (2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

   b. Any other consequential loss.

5. **Equipment Breakdown Exclusions**

   We will not pay for loss or damage caused by or resulting from:

   a. Breakdown of any structure, foundation, cabinet, compartment or air supported structure or building;

   b. Breakdown of any insulating or refractory material;

   c. Breakdown of any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system or water piping other than boiler feed water piping, boiler condensate, return piping or water piping forming a part of a refrigerating or air conditioning system;

   d. Breakdown of any vehicle, dragline, excavation or construction equipment;

   e. Breakdown of any equipment manufactured by you for sale;

   f. Any of the following tests:

      (a) A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

      (b) An insulation breakdown test of any type of electrical equipment.

C. **LIMITS OF INSURANCE**

   1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

   2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $5,000 per sign in any one occurrence.

   3. The limits applicable to:

      a. Coverage Extensions; and

      b. The following Additional Coverages:

         (1) Accounts Receivable,

         (2) Fire Department Service Charges,

         (3) Fire Extinguisher Recharge, and

         (4) Pollutant Clean Up and Removal

         are in addition to the Limits of Insurance.

   4. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

      a. Preservation of Property; or

      b. Debris Removal; but if:

         (1) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

         (2) The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Coverage.

      We will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

   5. **Building Limit - Automatic Increase**

      a. The Limit of Insurance for Building(s) will automatically increase annually by 4%.

      b. The amount of increase will be:

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

(1) The Limit of Insurance for Building that applied on the most recent of the policy inception date, policy anniversary date, or any other policy change amending the Building limit, times

(2) The percentage of annual increase shown above, expressed as a decimal (.04); times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Building, divided by 365.

Example: The applicable Limit of Insurance for Building is $100,000. The annual percentage increase is 4%. The number of days since the beginning of policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .04 X 146 divided by 365 = $1,600

6. **Business Personal Property Limit - Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if all Limits of Insurance shown in the Declarations for Business Personal Property is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

D. **DEDUCTIBLES**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. A $250 deductible applies to the following Glass Coverages:

a. Building Glass

b. Glass Expense

c. Tenant Glass

3. Except as listed below, the deductible applicable to Coverage Extensions and

Additional Coverages in the Special Property Coverage form is $100.

a. No deductible applies to the following Coverage Extensions and Additional Coverages:

(1) Fire Extinguisher Recharge;

(2) Preservation of Property;

(3) Fire Department Service Charge;

(4) Business Income, Extra Expense, Civil Authority and Extended Business Income;

(5) Arson Reward; and

(6) Lock and Key Replacement

b. The deductible applicable to the following Additional Coverages is $250:

(1) "Money" and "Securities"; and

(2) Personal Effects

c. The deductible applicable to the following Additional Coverages is the policy deductible which is shown in the Declarations of this policy

(1) Equipment Breakdown;

(2) Increased Cost of Construction; and

(3) Leasehold Improvements unless a separate Deductible is shown in the Declarations.

4. The deductible applicable to the following coverages is $100 whether the coverage is provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a STRETCH endorsement;

a. Accounts Receivable;

b. Employee Dishonesty;

c. Outdoor Signs;

d. Glass;

e. Temperature Change; and

f. "Valuable Papers and Records"

unless a separate Deductible is shown in the Declarations.

5. No Deductible is applicable to the following coverages whether the coverage is provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a STRETCH endorsement:

a. ERISA - Employee Dishonesty

b. Fine Arts.

6. Each deductible shall be applied separately but only to the coverage specified, and the total deductible for all losses in any one occurrence

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

shall be the highest deductible amount that applies to this occurrence.

E. PROPERTY LOSS CONDITIONS

1. Abandonment

There can be no abandonment of any property to us.

2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. Duties In The Event Of Loss Or Damage

You must see that the following are done in the event of loss of or damage to Covered Property:

a. Notify the police if a law may have been broken.

b. Give us prompt notice of the loss or damage. Include a description of the property involved.

c. As soon as possible, give us description of how, when and where the loss or damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limits of Insurance.

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f. Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

h. Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

i. Cooperate with us in the investigation or settlement of the claim.

j. Resume part or all of your "operations" as quickly as possible.

4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

5. Loss Payment

In the event of loss or damage covered by this policy:

a. At our option we will either:

(1) Pay the value of lost or damaged property, as described in paragraph d. below;

(2) Pay the cost of repairing or replacing the lost or damaged property, plus any reduction in value of repaired items;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

b. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. We will determine the value of Covered Property as follows:

(1) At replacement cost (without deduction for depreciation), except as provided in (2) through (7) below.

(a) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(b) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs d.(1)(a) and d.(1)(b) above whether or not the actual repair or replacement is complete.

(c) We will not pay more for loss or damage on a replacement cost basis than the least of:

(i) The cost to replace, on the same premises, the lost or damaged property with other property of comparable material and quality and used for the same purpose; or

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(2) If the Actual Cash Value - Buildings option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3) The following property at actual cash value:

(a) Manuscripts;

(b) Works of art, antiques or rare articles, including etchings, pictures, statuary, objects of marble, bronzes, porcelains and bric-a-brac.

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing, if others pay for repairs or replacement.

(6) "Valuable Papers and Records", at the cost of:

(a) Blank materials for reproducing the records; and

(b) Labor to transcribe or copy the records.

(7) "Money" and "Securities":

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

(a) Distilled spirits;

(b) Wines;

(c) Rectified products; or

(d) Beer.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of

© 2002, The Hartford

lost or damaged property if other than you. If we pay the owners, such payment will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn statement of loss, if:

(1) You have complied with all of the terms of this policy; and

(2) (a) We have reached agreement with you on the amount of loss, or

(b) An appraisal award has been made.

h. The following condition applies to any loss payment for Extra Expense:

We will deduct from the total Extra Expense to be paid:

(1) The salvage value that remains of any property bought for temporary use during the Period of Restoration, once business operations are resumed;

and

(2) Any Extra Expense that is paid for by other insurance.

6. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

7. **Resumption of Operations**

In the event of loss or damage at the "scheduled premises" you must resume all or part of your "operations" as quickly as possible.

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "scheduled premises" or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

8. **Vacancy**

a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

9. **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

a. We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Water damage;

(5) Theft; or

(6) Attempted theft.

b. With respect to Covered Causes of Loss other than those listed in a.(6) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

### F.  PROPERTY GENERAL CONDITIONS

**1.  Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2.  Mortgage Holders**

a.  The term mortgage holder includes trustee.

b.  We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

c.  The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

(1)  Pays any premium due under this policy at our request if you have failed to do so;

(2)  Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3)  Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this policy will then apply directly to the mortgage holder.

e.  If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1)  The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2)  The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event,

your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgage holder at least:

(1)  10 days before the effective date of cancellation if we cancel for your non payment of premium; or

(2)  30 days before the effective date of cancellation if we cancel for any other reason.

g.  If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**3.  No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4.  Policy Period, Coverage Territory**

Under this form:

a.  We cover loss or damage commencing:

(1)  During the policy period shown in the Declarations; and

(2)  Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

But we do not cover loss or damage that is also covered by a preceding policy.

b.  The coverage territory is:

(1)  The United States of America (including its territories and possessions);

(2)  Puerto Rico; and

(3)  Canada.

**5.  Additional Conditions**

The following conditions apply to paragraph A.5.u., Forgery Additional Coverage:

a.  We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

b.  You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

c.  The Coverage Territory is revised to cover loss you sustain anywhere in the world.

© 2002, The Hartford

G. PROPERTY DEFINITIONS

1. "Computer" means a programmable electronic device that can store, retrieve and process "data".

2. "Computer Equipment" means "computers", "peripheral devices", "media", and manuals that are purchased to be used in conjunction with hardware and "software".

3. "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4. "Data" means information or facts stored in a "computers" memory, on "software" or on "media".

5. "Finished Stock" means stock you have manufactured.

"Finished Stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

6. "Manager" means a person serving in a directorial capacity for a limited liability company.

7. "Media" means the magnetic material used solely with the "computer" or "peripheral device" upon which "software" or "data" is stored, such as tapes or disks.

8. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

9. "Money" means:

   a. Currency, coins and bank notes whether or not in current use; and

   b. Travelers checks, registered checks and money orders held for sale to the public.

10. "Operations" means the type of your business activities occurring at the "scheduled premises" and tenantability of the "scheduled premises".

11. "Period of Restoration" means the period of time that:

    a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the "scheduled premises", and

    b. Ends on the date when the property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

    "Period of Restoration" does not include any increased period required due to enforcement of any law that:

a. Regulates the construction, use or repair, or required the tearing down of any property; or

b. Regulates the prevention, control, repair, clean up or restoration of environmental damage.

   The expiration date of this policy will not cut short the "period of restoration".

12. "Peripheral Device" means any physical unit used to operate the "computer" that cannot be used for purposes other than as part of the computers system, such as tape or disk drives, printers, or modems.

13. "Perishable Stock" means personal property:

    a. Maintained under controlled conditions for its preservation; and

    b. Susceptible to loss or damage if the controlled conditions change.

14. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

15. "Scheduled Premises" means any premises listed by location address in the Scheduled Premises section of the Declarations.

16. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets except Lottery Tickets, revenue and other non-postage stamps whether or not in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

    but does not include "money."

17. "Software" means instructions or programs that are stored on "media" and which instruct the hardware as to how to process "data".

18. "Specified Causes of Loss" means the following:

    Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the

© 2002, The Hartford

SPECIAL PROPERTY COVERAGE FORM

action of water on limestone or dolomite. It does not include the cost of filling sinkholes.

b.  Falling objects does not include loss of or damage to:

(1)  Personal property in the open; or

(2)  The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c.  Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

19.  "Suspension" means:

a.  The partial or complete cessation of your business activities; and

b.  That a part or all of the "scheduled premises" is rendered untenantable as a result of a covered cause of loss.

20.  "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" and "securities", "data" and "software" or the materials on which the "data" and "software" is recorded.

© 2002, The Hartford

Form SS 00 07 10 02

# Exhibit A

# Part 2

# MLM

## MUSICK LOSS MANAGEMENT, INC.

3101 N. Western Ave. • Chicago, Illinois 60618

Licensed Public Adjusters
Adjuster & Contractor for the Insured

Office: (773) 529-9500
Fax:    (773) 529-9600

December 20, 2005

From: Keith Zdeb
     Musick Loss Management, Inc.

To: Jeffrey Heimerl, General Adjuster
    P.O. Box 6715
    Naperville, Il 60565
    (877)230-3084 / x 61218

Cc: USA Fab Inc.

Re:    Insured:    USA Fab Inc.
            Claim#     CP0005093936
            Policy#    83 SBA PP9791
            DOL:      07/31/2005

Dear Mr. Heimerl,

Pursuant to your request, I am enclosing the **SWORN STATEMENT & PROOF OF LOSS.** I am calling this proof of loss "preliminary". It only represents the business personal property claim. As the business interruption / extra expense claim is still continuing – it is impossible to project the actual loss at this time.

I am attaching a statement of loss regarding the various aspects of the business personal property claim. There are several reasons why I refer to this as a "preliminary" proof of loss, and would like to expound on some of my concerns.

I have enclosed the machinery and equipment analysis that was performed by KWM (Kaufman-Worthen Machinery) along with his report to you dated November 18, 2005. I note that the majority of the machinery and equipment had minimal damage and he has assigned a value for cleaning these pieces. While I do not disagree with his analysis I do have major reservations with respect to the cleaning, restoration and replacement cost values. After this explosion occurred the sprinkler system discharged flooding the warehouse and adversely affected many of the pieces of equipment and machinery. There is no way of knowing the extent of degradation as a result of the explosion and water damage until the machinery and equipment is completely serviced and powered up. Therefore, I am not in agreement with the cleaning / restoration value assigned by KWM for the purpose of complying with the proof of loss request. I have listed the assigned values from KWM, but reserve the right to amend the proof of loss, either higher / lower



based upon *actual* repair or replacement of each individual piece. Based upon this concern this is one of the reasons why I am referring to the proof of loss as "preliminary".

The second area of concern is the items listed on the Garvin – Fram inventory that were not analyzed by KWM, that are not listed as a total loss. We have assigned values to all items which were deemed total loss by the Garvin – Fram inventory and have not assigned any values to the remainder. I have similar concerns as listed in the prior paragraph for these items as well. At a minimum, there should be some type of cleaning / refurbishing allowance, but at this time no value has been agreed upon. As cited above until each item is thoroughly checked and powered up I would like to reserve the right to amend the proof of loss higher / lower based upon *actual* cleaning, restoration or replacement cost.

At this time, we are submitting the preliminary SWORN STATEMENT & PROOF OF LOSS in the amount of $304,284.49, on a replacement cost basis and an actual cash value claim of $168,716.80 – subject to the policy deductible. It is my understanding that coverage is provided on a replacement cost basis and I wish to advise you that it is our insured's intent to make claim under the replacement cost provisions of the policy, and accept this as proper notice.

After you've had an opportunity to review this package, please feel free to call me to further discuss this matter.

Truly yours,

Keith Zdeb
Vice-President
Musick Loss Management, Inc.

**SWORN STATEMENT IN PROOF OF LOSS**

Business Personal Property Only

$~~1,000,000.00~~
Amount of Policy at Time of Loss

Claim Number

83 SBA PP9791
Policy Number

05-06-2005
Date Issued

Illinois
Agency at

05-06-2006
Date Expires

Ronald J. Fisher Assoc
Agent

To the __Hartford Casualty Insurance Company__
of __Hartford, CT__
At time of loss, by the above indicated policy of insurance you insured __U.S.A. Fab Inc.__

against loss by __all risks__ upon the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

1. Time and Origin: An __explosion__ loss occurred about the hour of _____ o'clock ____ M. on the __7.31.__ day of 05. The cause and origin of the said loss were _____ __unknown to insured__

2. Occupancy: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: __Metal job shop and office__

3. Title and Interest: At the time of the loss the interest of your insured in the property described therein was __owner__. No other person or persons had any interest therein or incumbrance thereon, except: __none__

4. Changes: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: __none__

5. Total Insurance: The total amount of insurance upon the property described by this policy was, at the time of the loss, $ __1,000,000.00__ as more particularly specified in the apportionment attached under Schedule "C" besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6. The Actual Cash Value of said property at the time of the loss was . . . . . . . . . . UNDETERMINED

7. The Whole Loss and Damage was . . . . . . estimated to be . . . . . . . . . .$304,284.49

8. The Amount Claimed under the above numbered policy is /estimated to be . . . $168,716.80

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

State of __Illinois__

County of __Cook__    _____ Insured

Subscribed and sworn to before me this _____    20 __05__

OFFICIAL SEAL
Mark Musick
Notary Public, State of Illinois
My Commission Expires 04/08/07    Notary Public

USA FAB

## STATEMENT OF LOSS

| ITEM NO. | ITEM | REPLACEMENT COST | ACTUAL CASH VALUE |
|---|---|---|---|
| 1 | Machinery & Equipment / per Kaufman - Worthen Machinery, Inc. | $157,775.00 | $36,275.00 |
| 2 | Total loss stock, raw materials, work in process, equipment, supplies & Finished goods (per Garvin Fram inventory) | $98,977.55 | $93,892.51 |
| 3 | Office Furniture, equipment & supplies (see list - Garvin Fram missed this area) | $7,495.00 | $5,080.10 |
| 4 | Equipment & Raw materials on/by racks where roof/wall collapsed & thrown out by demolition contractor & not part of Garvin Fram Inventory | $40,036.94 | $33,469.19 |
| | TOTAL: | $304,284.49 | $168,716.80 |

# KAUFMAN - WORTHEN MACHINERY, INC.

3815 Grandville Avenue
Gurnee, Illinois 60031

Phone:   847/360-9170
FAX:      847/360-9189

November 18, 2005

**Mr. Jeff Heimerl**
**The Hartford Insurance Company**
P.O. Box 3118
Naperville, IL 60566-7118

> RE:    USA Fab/Mt. Prospect, IL
>         D.O.L.   7/31/05

Dear Jeff,

As a follow up to our telephone conversation yesterday, I am enclosing herewith a summary valuation spreadsheet for the equipment damaged as a result of the explosion and fire at USA Fab in Mt Prospect, IL.

As you review these documents please keep in mind the following information:

1.   I have organized this document in the order that I inspected the equipment in the plant, utilizing the Garvin-Fram inventory numbers as the main identifier.  Their order is obviously different from mine.

2.   There are a few pieces of equipment that Garvin-Fram identified on their schedule that were not available for my inspection, and thus were not valued by me.  I can only assume that they were scrapped, as they were not on the premises during either of my two visits.

3.   The allowance for trucking is based on the estimated weight of the item and an assumption that the equipment might have to be transported from a distance of between 500 and 750 miles.  It is also based on a "single machine shipment" or in other words, one piece at a time.  In actual practice, if this equipment were to be replaced, probably 75% of it could be rounded up in the Chicago area and many machines could be combined on the same truck for cost efficient transportation, potentially reducing this total by more than half.

4.   The allowance for electrical installation is based upon the assumption that each machine is <u>permanently</u> installed with all of the Electrical Code

Mr. Jeff Heimerl
November 18, 2005
Page 2

required distribution and feed equipment, including an individual fused
disconnect switch, ceiling mounted conduit wiring and flexible (sealtite)
connections at each machine control panel. In actual practice, much of
the equipment at USA Fab was <u>not</u> installed or was temporarily installed
using extension cords.

5.  Much of the equipment at USA Fab is very old and no longer
    manufactured. For purposes of this valuation assignment, I have used
    my best judgement to try and select a "comparable" machine that would
    come as close as possible in terms of "like kind and like quality". The
    New Replacement Cost column represents the amount that would be
    required to replace each piece of equipment with a new equivalent
    machine.

6.  The Fair Market Value column represents the estimated amount that
    would be required to replace the USA Fab equipment in the current used
    machinery marketplace with equivalent machinery in similar condition.
    For all intents and purposes, this amount is essentially the same as
    "Actual Cash Value".

I trust that the above information is self explanatory but should you have any
additional questions. Please do not hesitate to contact me.


Sincerely,

**Kaufman-Worthen Machinery, Inc.**


**Richard J. Worthen, CEA, ASA**
Managing Partner/Asset Valuation Division

RJW/mam

USA Fab
The Hartford Insurance Company
9/28/2005
DOL 7/31/2005
Inspection 9/28/2005

## Equipment Valuation Summary

| Vih/Fra/m/Nu | Equipment Mfgr | Model | Serial # | Equipment Description | Original New Cost or NRC | Freight | Rigging | Piping | Electrical | Total Install Cost | Total New Cost Installed | Year | Actual Age | Pre-Loss Condition | Related Damage | Repairs Needed | Clean or Repair or Used | Market Value (From Used) | NRC Comparable Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/16 Electric | Miller | Dialarc 250 | HF86399 8 | 250 Amp, AC/DC TIG Welder | 4,200 | 150 | | | 825 | 975 | 5,175 | 1988 | 19.5 | Fair/Good | None | Clean | 25 | 750 | Weldmart |
| 6/18 Electric | Miller | DeltaWeld 450 | JA366253 | 450 Amp DC MIG Welder w/Wire Feeder & Boom | 5,377 | 200 | | | 825 | 1,025 | 6,402 | 1990 | 15.5 | Fair/Good | None | Clean | 25 | 1,250 | Weldmart |
| 8/3 Acme | Acme | Special | ukn | S/P Double End Tube De-Burring & Polishing Machine | 27,500 | 675 | 750 | | 825 | 2,250 | 29,750 | 1980 | 25.5 | Good | None | Clean | 100 | 8,500 | OWC File |
| 8/5 DoAll | DoAll | C-912A | 80625 | Horizontal Band Saw | 12,950 | 300 | 500 | | 825 | 1,625 | 14,575 | 1980 | 25.5 | Fair | None | Clean | 100 | 650 | DoAll |
| 8/7 Wells | Wells | 8M | 17103 | Horizontal Band Saw | 3,725 | 150 | | | | 150 | 3,875 | 1955 | 50.5 | Fair | None | Clean | 50 | 650 | RMT |
| 8/13 Mubea | Mubea | BF-10 | 6 | 21 Ton Capacity Ironworker | 5,290 | 300 | | 500 | 826 | 1,625 | 6,915 | 1972 | 33.5 | Fair | None | Clean | 100 | 2,500 | Scotchman |
| 8/16 Delta | Delta | 2325A | | 1/2 HP Bench Grinder w/stand | 542 | 25 | | | | 25 | 567 | 1965 | 40.5 | Fair | None | Clean | | 125 | Baldor |
| 8/18 (Taiwan) | Mech. | 37822 | | 1/2 HP 6" Double End Bench Grinder | 150 | 25 | | | | 25 | 175 | 1990 | 15.5 | Good | None | | 50 | 75 | WWG |
| DiAcro | DiAcro | 4 | DD-1142 | Manual Bender w/stand | 3,500 | 50 | | | | 50 | 3,550 | 1960 | 45.5 | Fail/Good | None | Clean | 50 | 1,200 | Diacro RMT |
| 8/9 Type | Tapper | I4 HP | | Tapper / secondary operation drilling machines | 1,498 | 25 | | | | 25 | 1,523 | 1950 | 55.5 | Fair | | | 25 | 400 | Accu Tapper |
| 1/3 Cincinnati | Cincinnati | 1008 | 18629 | Shear | 28,500 | 675 | | 500 | 825 | 2,000 | 30,500 | 1945 | 60.5 | Fair/Poor | Heavy | Total | 8,500 | 8,500 | Alisteel RMT |
| 5/5 Dynamics | Thermal Dynamics | PM 6040 M | 110-008 | 35 Amp Portable Plasma Cutter | 1,800 | 25 | | | 200 | 225 | 2,025 | 1994 | 11.5 | Fail/Poor | None | | | 600 | Weldmart |
| 9/4 Tecmators | Tecmators | 50 KVA | | Welder | 7,500 | 300 | | 850 | 1,150 | 2,300 | 9,800 | 1994 | 11.5 | Fail/Good | None | | | 4,500 | Online |
| Electric | Electric | 130 XP | KJ110848 | Welder | 762 | 50 | | | | 50 | 812 | 2001 | 4.5 | Very Good | None | Clean | | 350 | Weldmart |
| Strippet | Strippet | 1-A | DA61B4 | Pneumatic Operated Bender | 6,500 | 150 | | | | 150 | 6,650 | 1960 | 45.5 | Fair | None | | | 3,500 | Diacro RMT |

| Item | Mfr | Model | Serial | Description | Val | | | | Total | Year | Age | Cond | Wear | Clean | Qty | Vendor |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Miller | MP-30E | JE782306 | 300 Amp DC MIG Welding | 3,132 | 150 | | | 3,957 | 1995 | 10.5 | Good/NIS | None | | 500 | Weldmart |
| 6/12 Electric | Miller | MP-30E | 0 | 300 Amp DC MIG Welding | 3,132 | 150 | | | 3,957 | 1995 | 10.5 | Fair/Good | None | | 500 | Weldmart |
| 6/10 Electric | Miller | CP-250TS | R395370 | 250 Amp DC MIG Welding | 2,250 | 150 | | 825 | 3,075 | 1990 | 15.5 | Fair | None | | 400 | Weldmart |
| 6/8 Electric | Miller | CP-250TS | N311437 | Power Supply w/30A Wire Feeder | 3,720 | 150 | | 825 | 4,545 | 1990 | 15.5 | Fair | None | | 650 | Weldmart |
| 5/20 Electric | Miller | CP-250TS | | Power Supply w/S-54EA Wire Feeder | 3,720 | 150 | | 825 | 4,545 | 1990 | 15.5 | Fair | None | | 650 | Weldmart |
| 5/16 Electric | Rockwell | 84-450 | FJ9417 | 10" Tilting Arbor Table Saw | 1,950 | 150 | 250 | 400 | 2,350 | 1970 | 35.5 | Fair/Good | None | Clean | 600 | Amazon |
| 5/18 | Stone | M-750 | 0230 | Saw | 4,565 | 150 | 250 | 150 | 4,715 | 1970 | 35.5 | Fair/Poor | None | Clean | 50 | Wilton RMC |
| 4/21 | Brobo | Super 300 | | 12" Dia. Cold Saw | 4,725 | 150 | 250 | 150 | 4,875 | 1975 | 30.5 | Fair/Poor | None | Clean | 1,200 | Wilton RMC |
| 5/1 | Central Pneumatic | 42202 | | 28 x 18 x 20 Sand Blast Cabinet | 155 | 25 | | 25 | 180 | 1999 | 7.5 | Poor | None | | 75 | Oxline |
| 4/23 | Verson | 25/6 | 1475.106 | Brake | 22,900 | 675 | 500 | 825 | 24,900 | 1962 | 43.5 | Fair | None | | 2,400 | D&K RMT |
| 1/18 | Stripoil | Sonic 18/30 | 12366 | 30 Ton Sheet Metal Fabricator | 30,350 | 675 | 500 | 2,000 | 32,350 | 1966 | 39.5 | Fair | Heavy | Total | 8,500 | Stirpoli/RMT |
| 1/22 | Fong Ho | FHC-275SA | 273178 | 11" Dia. 1.5 HP Cold Saw | 3,865 | 150 | 250 | 500 | 900 | 4,765 | 1998 | 7.5 | Fair/Poor | None | Clean | 100 | MSC |
| 3/17 | Air Mite | | | Presses | 1,200 | 25 | | 25 | 1,225 | 1970 | 35.5 | Fair/NIS | None | | 1,500 | MSC |
| 3/6 | Rivet | 3241 | SS | Rivet Setter | 6,500 | 150 | 250 | 900 | 7,400 | 1980 | 25.5 | Good | None | | 3,500 | Stroh DC |
| 1/20 | Krump | 131 | 13661 | Brake | 7,500 | 675 | 250 | 500 | 2,250 | 9,750 | 1962 | 43.5 | Fair/Poor | None | | 4,500 | D&K RMT |
| 5/13 | eu | 22 | | 5 HP DE Polishing Lathe | 6,500 | 300 | 250 | 825 | 7,875 | 1960 | 45.5 | Fair | None | Clean | 1,800 | Hammond |
| 5/9 | Trinco | 36/BP2 | 41849-4 | Cabinet | 1,575 | 150 | | 150 | 1,725 | 1985 | 20.5 | Good | None | Clean | 100 | DriBlast RMC |
| 9/11 | k | 3K-102 | 1165 | Terminal Sinking Press | 2,600 | 675 | 500 | 150 | 2,750 | 1981 | 24.5 | Fair/Good | None | Clean | 50 | SSCO |
| 5/11 | Shop Made | | 236110 | Tumbler | 5,500 | 675 | 500 | 2,000 | 7,500 | 1955 | 50.5 | Poor/NIS | None | Clean | 750 | DriBlast RMC |
| 4/12 | Rousselle | #2 | Press | Press | 6,500 | 300 | 250 | 400 | 7,450 | 1975 | 30.5 | Poor/NIS | None | Clean | 1,500 | Rousselle |
| 4/19 ik | ZA-250 | 90173 | | Sheet Deburring Machine | 3,255 | 150 | | 550 | 3,805 | 1990 | 15.5 | Good | None | Clean | 100 | RMC |
| 4/16 Delta | 17" | | | V Belt Drill Press w/Commander Head | 3,560 | 300 | 250 | 825 | 4,935 | 1950 | 55.5 | Poor | None | | 1,200 | RMC |
| 4/14 Kalamazoo | Start-Rite 24 V-10 | 41605 | | 24" Vertical Band Saw | 5,595 | 300 | 250 | 1,375 | 6,970 | 1990 | 15.5 | Fair/Good | None | | 150 | 1,100 | Clausing |
| Eng. | | 5HDSB | 2494 | Bender | 1,800 | 50 | | 50 | 1,850 | | | | None | Clean | 100 | 600 | 2,500 | Diarco |

| Item | Mfr | Model | Serial | Description | | | | | | | | Year | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/16 | D&K | 131SP | LW7602 | Brake | 7,500 | 675 | 250 | 500 | 2,250 | 9,750 | | 1953 | 52.5 | Very Poor | Heavy | Total | 700 | 700 | RMT |
| 4/17 | Harig | 618 | | 6 X 12 Hand Feed Surface Grinder | 7,580 | 300 | 250 | | 1,375 | 8,955 | 1970 | 35.5 | Fair/Good | None | | Clean | 200 | 1,200 | Harig RMC |
| 4/3 | Bridgeport | BR-J Step Head | 58464 | 1 HP Vertical Milling Machine | 7,250 | 300 | 250 | | 1,375 | 8,625 | 1961 | 44.5 | Fair | None | | Clean | 200 | 1,500 | Acer |
| 4/6 | Bridgeport | BR-J Step Head | 48656 | 1 HP Vertical Milling Machine | 8,150 | 300 | 250 | | 1,375 | 9,525 | 1960 | 45.5 | Fair/Poor | None | | Clean | 200 | 1,500 | Acer |
| 4/7 | Ultramatic Chasing | E-2.5 | 1127 | 2 HP, 2.5 Cu FL Batch Type Vibratory Finishing Mill | 7,500 | 300 | 250 | | 1,375 | 8,875 | 1975 | 30.5 | Fair/Good | None | | | | 2,500 | Sweco 2.5LR |
| 3/23 | Colchester 13" Bantam | 2/25347A | | 13' x 24' Geared Head Engine Lathe | 13,350 | 300 | 250 | | 825 | 14,725 | 1961 | 44.5 | Fair/Poor | None | | | 200 | 2,400 | Trochnex 13 |
| 3/20 | Harrison 11" | | | Engine Lathe | 13,350 | 300 | 250 | | 825 | 14,725 | 1955 | 50.5 | Fair/Poor | None | Clean | 200 | 1,800 | Trochnex 13 |
| 3/4 | er | 4 Ton OBI | | 4 Ton OBI Mechanical Press | 2,675 | 150 | | | 400 | 3,225 | 1958 | 47.5 | Poor | None | | | 800 | RMT |
| 3/3 | Famco | #3-1/2 | | 4 Ton Capacity Arbor Press | 1,990 | 50 | | | 50 | 2,040 | 1950 | 55.5 | Fair | None | | 350 | Dake 4 Ton |
| 2/21 | Gifford | 2LMS | 5159 | Press | 6,240 | 300 | 250 | | 1,375 | 7,615 | 1942 | 63.5 | Poor | None | | 450 | Knuth |
| 2/23 | Summit | 21" | | Machine | 6,240 | 300 | 250 | | 1,375 | 7,615 | 1961 | 44.5 | Fair/Poor | None | | 200 | 2,200 | Summit |
| 2/10 | Yuasa | AUX-500 | 72555 | Press | 4,525 | 300 | 250 | | 1,375 | 5,900 | 1972 | 33.5 | Fair | None | | 200 | 1,600 | Yuasa |
| 2/7 | s-Rite | #3 | 39B | Press | 17,500 | 300 | 250 | | 1,375 | 18,875 | 1950 | 55.5 | Minor | | 250 | 1,000 | Rousselle |
| 2/5 | Denison | 4 Ton | | Press | 5,300 | 150 | 100 | | 400 | 5,950 | 1955 | 50.5 | Fair | Clean | 100 | 1,750 | RMT |
| | Wallace (type) | | | Horizontal Tube Bending Machine | 17,500 | 350 | 150 | 250 | 760 | 18,250 | 1955 | 50.5 | Fair/Poor | Clean | | 3,500 | Manchester |
| 2/8 | Walsh | #38 | 9064 | 38 Ton OBI Mechanical Press | 17,500 | 300 | 250 | | 1,375 | 18,875 | 1957 | 48.5 | Poor | Clean | 250 | 1,000 | Rousselle |
| 2/16 | Pines | #3-T | 3THS-168 | 1" High Speed Hydraulic Vertical Tube Bender | 59,000 | 675 | 500 | 500 | 2,500 | 60,500 | 1944 | 61.5 | Fair/Poor | Clean | 250 | 9,000 | Perfection |
| 3/11 | Denison | G-10 | 11933 | 10 Ton Floor Type C Frame Hyd. Press | 9,500 | 300 | 250 | | 825 | 10,675 | 1966 | 39.5 | Fair | Clean | 750 | 5,500 | Multipress |
| 1/14 | Strek-O | G-14 | 163 | 4 Ton Floor Type C Frame Brake | 17,250 | 675 | 500 | | 825 | 19,250 | 1966 | 39.5 | Fair | Clean | 500 | 5,500 | RMT |
| 6/6 | Miller Electric | Syncrowave 250 DX | LE25785/4 | 250 Amp AC/DC TIG Welding Machine | 2,850 | 150 | | | 150 | 3,000 | 2004 | 1.5 | Excellent | None | | 2,200 | Weldmart |
| 6/6 | Baldor Richards | 662 | | Grinder | 361 | 25 | | | 25 | 406 | 1985 | 20.5 | Fair/Good | None | | 125 | Baldor |
| 2/14 | Multiform | BBB | 467-BBB | Pneumatic Operated Vertical Die Bender | 11,280 | 150 | | 250 | 400 | 11,680 | 1965 | 40.5 | Fair/Good | None | Clean | 150 | 2,500 | KHB-22 |

| Date/Mfr | Model | Serial | Description | | | | | | | | Year | | Cond. | | | | | Name |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/19 Lown (type) | B-450 | | 10 Ga X 4' Power Driven Slip Rod Forming Machine | 8,390 | 675 | 500 | | 825 | 2,000 | 10,390 | 1940 | 65.5 | Poor | None | | | 1,500 | Knuth |
| 10/3 Ideal | WSIB-1240 | 9 | Carton Stitcher | 675 | 90 | | | 50 | 725 | | 1972 | 33.5 | Good | None | | | 250 | Ideal |
| 9/9 Detecto | 232BAT4 | 620474 | Scale | 2,250 | 50 | | | 50 | 2,300 | | 1974 | 31.5 | Good | None | | | 750 | Detecto |
| 1/9 Warco | #50 | 47488 | 50 Ton Adjustable Bed Mechanical Horn Press | 56,600 | 1,125 | 1,200 | | 825 | 3,650 | 60,250 | 1947 | 58.5 | Poor | Moderate | Total | | 5,000 | Winsler 50 |
| 1/5 Allsteel | 1/4 x 10 | 140167 | Hydraulic Plate Squaring Shear | 43,440 | 1,125 | 1,200 | | 825 | 3,650 | 47,090 | 1990 | 15.5 | Good | Minor | Clean | | 350 | RMT |
| 1/1 Allsteel | 175-12 | 20254 | Mechanical Press Brake with CNC Back Gage | 71,855 | 1,125 | 1,200 | 500 | 825 | 3,650 | 75,505 | 1995 | 10.5 | Good | Minor | Clean | | 350 | CNCI App |
| 1/11 Kristen | 25-4 | 157 | 25 Ton Capacity x 4' Long Mechanical Press Brake | 21,600 | 675 | 500 | | 825 | 2,000 | 23,600 | 1954 | 51.5 | Fair | None | | | 2,400 | RMT |
| Dreis & Krump 1/13 | 56-A | n/n | 30 Ton Capacity x 6' Long Mechanical Press Brake | 21,600 | 676 | 500 | | 825 | 2,000 | 23,600 | 1955 | 50.5 | Fair | None | | | 3,000 | RMT |
| 3/11 Rousselle | 3G | 23085 | Mechanical Press | 13,500 | 300 | 250 | | 400 | 950 | 14,450 | 1985 | 20.5 | Good | None | | | 2,400 | Rousselle |
| 6/14 Airco | CV Aircomatic | S405538 | 250 Amp DC MIG Welder | 4,150 | 150 | | | 826 | 975 | 5,125 | 1975 | 30.5 | Fair | None | | | 760 | Weldmart |
| 3/5 Walsh | #38 | 9240 | 38 Ton OBI Mechanical Press | 17,500 | 300 | 250 | | 825 | 1,375 | 18,875 | 1956 | 47.5 | Poor | None | Clean | 250 | 1,000 | Rousselle |
| 4/1 Avey | #2/MA-6 | 21 | Machine | 14,560 | 675 | 500 | | 825 | 2,000 | 16,560 | 1945 | 60.5 | Poor | None | Clean | | 1,200 | Clausing |
| 2/12 Hammond | 600W | 891 | 2 HP 6" Wet Belt Sander | 5,890 | 300 | 250 | | 825 | 1,375 | 7,265 | 1980 | 25.5 | Fair | None | | | 1,800 | RMT |
| Kearney & Trecker 2/19 | 2H | 1-4226 | #2 Plain Horizontal Milling Machine | 21,360 | 675 | 500 | | 825 | 2,000 | 23,360 | 1943 | 62.5 | Poor | None | | | 1,000 | Knuth |
| 5/3 Tool | 2671100 | 11024 | 16' Abrasive Chop Saw | 72D | 50 | | | | 50 | 770 | 1897 | 8.5 | Fair/Good | None | Clean | 50 | 350 | Rutland |
| 3/6 Type | | Bender | 24' Diameter Turn Table Bar & Tube Bender | 15,000 | 675 | 500 | | 825 | 2,000 | 17,000 | 1985 | 20.5 | Fair/Good | None | Clean | 200 | 6,500 | Perfection |
| Shop Made | | | | | | | | | | | | | | | | | | |
| 5/2 Rockwell | 20-115 | OH | | 1,950 | 100 | | | | 250 | 2,200 | 1965 | 40.5 | Fair/Poor | None | | | 500 | Kalamazoo |
| 3/21 Bridgeport | BRJ Step Head | 105738 | 1 HP Vertical Milling Machine | 7,250 | 350 | 250 | | 825 | 1,425 | 8,675 | 1981 | 44.5 | Fair/Poor | None | Clean | 150 | 1,500 | Acer |
| 5/7 Press-Rite | #30 | 1019 | Press | 17,500 | 300 | 250 | | 825 | 1,375 | 18,875 | 1955 | 50.5 | Fair | None | | 250 | 1,000 | Rousselle |
| 4/6 Rousselle | #3 | 215 | Press | 13,500 | 300 | 250 | | 400 | 950 | 14,450 | 1950 | 55.5 | Very Poor | None | | | 300 | Rousselle |
| 4/10 Rousselle | 2F | 24238 | Press | 6,500 | 250 | | | 400 | 1,050 | 7,550 | 1965 | 40.5 | Fair/Good | None | | | 1,800 | Rousselle |

| Date | Company | Model | Serial | Description | C1 | C2 | C3 | C4 | C5 | Total | Year | % | Cond. | Wear | Repl. | Value | Source |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/11 | Miller | #151 | 57950 | 4 Ton OBI Mechanical Press | 2,675 | 150 | | 200 | 350 | 3,025 | 1958 | 47.5 | Fair/Poor | None | | 400 | RMT |
| 5/22 | Electric | CP-250TS | S407851 | Power Supply w/10A Wire Feeder | 3,720 | 150 | | 825 | 975 | 4,695 | 1979 | 26.5 | Fair/Good | Moderate | | 650 | Weldmart |
| 2/3 | Pines | #2 | 11235-79135 | Hydraulic Operated Tube Bending Machine | 115,150 | 1,875 | 1,500 | 760 | 1,200 | 120,475 | 1979 | 28.5 | Fair/Good | Clean | 2,500 | 35,000 | Hutch |
| 2/1 | Strippit | 18/30 | 72102673 | 30 Ton Sheet Metal Fabricator | 30,350 | 1,125 | 650 | 825 | 2,600 | 32,950 | 1973 | 32.5 | Fair | None | | 15,000 | Strippil |
| 6/1 | Clausing | 2276 | 510649 | 20" Floor Type V/S Drill Press | 3,685 | 300 | 250 | | 825 | 4,510 | 1980 | 32.5 | Fair | None | | 650 | RMT |
| 7/7 | Ridgid | 535 | | Machine | 5,085 | 150 | | | | 5,085 | 1980 | 25.5 | Good | Clean | 100 | 1,500 | WWG |
| 6/23 | Miller Electric | MP-30E | JA358959 | 300 Amp DC MIG Welding Power Supply | 3,132 | 150 | | | | 3,132 | 1990 | 25.5 | Fair/NIS | None | | 400 | Weldmart |
| 7/1 | Electric | CP-250TS | HDY2212 5 | 250 Amp DC MIG Welding Power Supply | 2,250 | 150 | | | | 2,250 | 1980 | 25.5 | Fair/NIS | None | | 350 | Weldmart |
| 7/3 | Electric | CY-300 | HG02772 8 | 300 Amp DC MIG Welding Power Supply | 3,132 | 150 | | | | 3,132 | 1980 | 25.5 | Fair/NIS | None | | 400 | Weldmart |
| 7/12 | Airco | PA-3A | 3652 | 300 Amp DC MIG Welding Power Supply | 3,132 | 150 | | | | 3,132 | 1980 | 25.5 | Fair/NIS | None | | 350 | Weldmart |
| 7/8 | Lincoln | K-1287 | A980514 | 150 Amp DC Gas Driven Welding Machine | 2,575 | 150 | | | | 2,575 | 1985 | 20.5 | Fair/NIS | None | | 650 | WWG |
| 7/16 | Airco | 2.50TR-224-A | T455800 | 250 Amp DC MIG Welding Power Supply | 2,250 | 150 | | | | 2,250 | 1990 | 25.5 | Fair/NIS | None | | 350 | Weldmart |
| 7/18 | Miller Electric | CP-300 | JA437774 | 300 Amp DC MIG Welding Power Supply | 3,132 | 150 | | | | 3,132 | 1980 | 25.5 | Fair/NIS | None | | 350 | Weldmart |
| 7/21 | Miller Electric | MP-65E 8 | HE60692 | 650 Amp DC Mig Welding Power Supply | 3,734 | 150 | | | | 3,734 | 1990 | 25.5 | Fair/NIS | None | | 650 | Miller 650 |
| 8/1 | Hobart | Bela Mfg 250 | SP7189A 001 | 250 Amp Mfg Welding Machine | 2,244 | 150 | | | | 2,244 | 1990 | 15.5 | Fair/NIS | None | | 600 | Miller 251 |
| 2/2 | Electric | 30E | | Feeders | 2,050 | 50 | | | | 2,050 | 1980 | 25.5 | Fair/NIS | None | | 350 | Miller 22A |
| | | | | **Total** | 1,050,130 | | | | | 102,177 / 1,153,305 | | | | | 36,275 | 258,950 | |

*GFI*

*Garvin-Fram, Inc.*

37151

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| | *U.S.A. Fab* | | | 8/8/05 |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER |
| | | | | 508C 112 |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Allsteel Press Brake mod# 135-12 | 1 | | | | | |
| 2 | S/N MG-20254  cap 135 T | | | | | | |
| 3 | Cincinnati Shear mod 1808 | 1 | | | | | |
| 4 | S/N 18629  cap 10 GA. mild steel | | | | | | |
| 5 | Allsteel Shear mod# 14-10 | 1 | | | | | |
| 6 | S/N MG-14016 2 cap 1/4 steel 3/16 55 mild | | | | | | |
| 7 | Wahoo 50 Press S/N 42488 | 1 | | | | | |
| 8 | stroke 4" S/m 200 cap 50 Ton | | | | | | |
| 9 | Wahoo 50 Press S/N 461260 | 1 | | | | | |
| 10 | Stroke 6" S/m 50 cap 50 Ton | | | | | | |
| 11 | Milwaukee-Dodges & Kirsten Inc. | 1 | | | | | |
| 12 | Press Brake mod 25-4 S/N 152 | | | | | | |
| 13 | E-L-Exley Press Brake (I.D. Tag no) | 1 | | | | | |
| 14 | Stroke-6 "  "  "  # 8-14 mod# | 1 | | | | | |
| 15 | S/N 165 | | | | | | |
| 16 | Chicago Dreis & Krump Press Brake | 1 | | | | | |
| 17 | Mod# 131 S.P.  S/N LW 7602 | | | | | | |
| 18 | Verson Press Brake S/N142511062 | 1 | | | | | |
| 19 | cap 25 ton | | | | | | |
| 20 | Chicago Dreis & Krump Press Brake | 1 | | | | | |
| 21 | Mod# 131  S/N LW-13661  cap 11 ton | | | | | | |
| 22 | Stripmit Amic 18/30 sheet metal | 1 | | | | | |
| 23 | fabricator S/N 104121366 - | | | | | | |
| 24 | Mach # 104 | | | | | | |

| SECTION | | | | | | PAGE TOTAL | |
|---|---|---|---|---|---|---|---|
| *Machinery* | | | | | | | |
| ACCEPTED FOR GFI BY | | ACCEPTED FOR INSURED BY | | | | PAGE | 1 |

GFI

INVENTORY

*Garvin - Fram, Inc.*

37152

| LISTED BY | INSURED | | | DATE 8/8/05 |
| --- | --- | --- | --- | --- |
| | *U.S.A. Fab* | | | |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER 508C117 |

| | DESCRIPTION | QUANTITY | PRICE | | | |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | Strippit Custom 18/30 Press 30 Ton | 1 | | | | |
| 2 | Cat # 91480  100  S/N 072102673 | | | | | |
| 3 | Pines pipe bender S/N 11235 79135 | 1 | | | | |
| 4 | w/ 3x6 Mandrel Pt # 012-00-242-02 | | | | | |
| 5 | Denison Engineering Hyd Press | 1 | | | | |
| 6 | Cap10 ton  2 - (No I.D Tag) | | | | | |
| 7 | Press Rite # 30 Press (no I.D Tag) | 1 | | | | |
| 8 | Walsh Press # 38 Press | 1 | | | | |
| 9 | S/N W-791-B | | | | | |
| 10 | Yassa Upright drilling + Tapping | 1 | | | | |
| 11 | Machine Stk # AUX-500 S/N 72555 | | | | | |
| 12 | Hammond Abrasive Belt Grinder | 1 | | | | |
| 13 | Mod 600W  S/N 891 | | | | | |
| 14 | Richards Multiform Bender, | 1 | | | | |
| 15 | S/N 407-BBB | | | | | |
| 16 | Pines Eng. S/N 3THS-168 Pipe | 1 | | | | |
| 17 | bender  Pines GO # 34047 | | | | | |
| 18 | (D11-36) | | | | | |
| 19 | Milwaukee Mod H  S/N 1-4226 | 1 | | | | |
| 20 | Horizontal milling machine | | | | | |
| 21 | Leland - Gifford Drill Press | 1 | | | | |
| 22 | (No I.D Tag) | | | | | |
| 23 | Summit Drill Press | 1 | | | | |
| 24 | (No I.D Tag) | | | | | |

| SECTION  *Machinery* | | | | PAGE TOTAL | |
| --- | --- | --- | --- | --- | --- |
| ACCEPTED FOR G.F.I. BY | | ACCEPTED FOR INSURED BY | | | PAGE 2 |

INVENTORY

*Garvin - Fram, Inc.*

37153

| LISTED BY | INSURED | | | | | DATE |
|---|---|---|---|---|---|---|
| | U.S.A. Fab | | | | | 8/8/05 |
| EXTENDED BY | ADDRESS | | | | | CHECK TOTAL |
| CHECKED BY | CITY | | STATE | | ZIP | LOT NUMBER |
| | | | | | | 508C112 |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Rousselle Press 38 MOD. S/N 23905 | 1 | | | | | |
| 2 | Cap 25 Ton | | | | | | |
| 3 | Famco Hand Press 3½ (no Tag) | 1 | | | | | |
| 4 | Benchmaster Punch Press (no Tag) 2 Ton | 1 | | | | | |
| 5 | Walsh Press Mod # 38 S/N 9240 | | | | | | |
| 6 | Chicago Rivet & Mach. Co. Riveter | 1 | | | | | |
| 7 | S/N Mod # 183-112-55 Part # 3241 | | | | | | |
| 8 | Eurodrive pipe bender, | 1 | | | | | |
| 9 | Type 5F80DT100L4BH | | | | | | |
| 10 | S.O. 095n0608-4HD | | | | | | |
| 11 | Wilmison Hyd. Press | 1 | | | | | |
| 12 | MOD GC10C6AD10A68035A81 | | | | | | |
| 13 | S/N 11983-A112-T9 | | | | | | |
| 14 | (No Mfg or ID Tag) Pipe bender, | 1 | | | | | |
| 15 | Twistair Compressor MOD # TA025723 | 1 | | | | | |
| 16 | S/N 91860 - Max PSI 125 | | | | | | |
| 17 | Long Ho cold Saw mod FHC 875.54 | 1 | | | | | |
| 18 | S/N 273178 | | | | | | |
| 19 | Rolling Machine - No ID # No mfg. | 1 | | | | | |
| 20 | Harrison Lathe (No ID Tag) | 1 | | | | | |
| 21 | Bridgeport mod 105238 | 1 | | | | | |
| 22 | S/N 105238 | | | | | | |
| 23 | Clausing 13x24 Engine Lathe | | | | | | |
| 24 | No ID Tag | | | | | | |

| SECTION | | | | | PAGE TOTAL | |
|---|---|---|---|---|---|---|
| Machinery | | | | | | |
| ACCEPTED FOR G.F.I. BY | | ACCEPTED FOR INSURED BY | | | PAGE | 3 |

INVENTORY

*Garvin-Fram, Inc.*

37154

| LISTED BY | INSURED U.S.A. Fab. | | | DATE 8/2/05 |
|---|---|---|---|---|
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER J08C117 |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 | Avey 4 head drilling machine | 1 | | | | |
| 2 | S/N on heads mA-9218-9219-9220-9221 | | | | | |
| 3 | Bridgeport (J48358) Drill | 1 | | | | |
| 4 | Press | | | | | |
| 5 | Had tube bends - No mfg. or I.D. # | 1 | | | | |
| 6 | Bridgeport # 48dd6 (G-82836) | 1 | | | | |
| 7 | Ultramatic parts Tumbler (I.D. Tag) | 1 | | | | |
| 8 | Rousselle stamping Press mA# 3 #25 | 1 | | | | |
| 9 | No s# | | | | | |
| 10 | Rousselle Punch Press mod # 2F | 1 | | | | |
| 11 | S/N 24238 | | | | | |
| 12 | Rousselle Punch Press mod #2 | 1 | | | | |
| 13 | S/N 23610 | | | | | |
| 14 | Kalamazoo Startrite band saw | 1 | | | | |
| 15 | #24-V-10 S/N 41605 | | | | | |
| 16 | Drill Press - No mfg or I.D. #'s | 1 | | | | |
| 17 | Harig #618 Surface grinder | 1 | | | | |
| 18 | (no I.D. Tag) | | | | | |
| 19 | H.M. type 3A-250 S/N 9017.3 | 1 | | | | |
| 20 | 2-burring machines (Dumore) | | | | | |
| 21 | Stone Saw type m-250 | 1 | | | | |
| 22 | S/N 0230 | | | | | |
| 23 | Central Pneumatic # 42202 | 1 | | | | |
| 24 | Blast Cabinet | | | | | |

| SECTION Machinery | | | | PAGE TOTAL | |
|---|---|---|---|---|---|
| ACCEPTED FOR G.F.I. BY | | ACCEPTED FOR INSURED BY | | | PAGE 4 |

#9

*Garvin - Fram, Inc.*

**37155**

| LISTED BY | INSURED | | | | | |
|---|---|---|---|---|---|---|
| | *U.S.A. Lab.* | | | DATE *8/8/05* | | |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL | | |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER *508C117* | | |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 | Brobo Saw - Super 300 | 1 | | | | |
| 2 | Cold Saw - No Mfg or S #'s | 1 | | | | |
| 3 | Rutland Mod # 26201000 | 1 | | | | |
| 4 | S/N 11024 Stent saw | | | | | |
| 5 | Thermal Dynamics PM6040 | 1 | | | | lbs. |
| 6 | Plasma Cutter S/N m21853A 185101 HM | | | | | |
| 7 | Harris Pressuits mod 065 | 1 | | | | |
| 8 | SE # 1019 Press | | | | | |
| 9 | Crimco dry Sandblaster 36/DP2 mod | 1 | | | | |
| 10 | S/N 41849-4 | | | | | |
| 11 | Ig Dual Parts Tumbler | 1 | | | | |
| 12 | No Mfg or TN # | | | | | |
| 13 | Chas G Thommidieu & sons #22 | 1 | | | | |
| 14 | Floor mounted twin wire wheel - dual | | | | | |
| 15 | Brobo Super 300 Saw | 1 | | | | |
| 16 | Miller CP-200 Welder | 1 | | | | |
| 17 | S/N JA361962 | | | | | lbs. |
| 18 | Rockwell Universal table Saw | 1 | | | | |
| 19 | Series # 34450 S/N FJ9417 | | | | | |
| 20 | Miller CP-250TS Welder | 1 | | | | |
| 21 | S/N N311437 | | | | | |
| 22 | Miller CP-250TS Welder | 1 | | | | |
| 23 | S/N S2407851 | | | | | |
| 24 | | | | | | |

| SECTION *Machinery* | | | | | PAGE TOTAL | |
|---|---|---|---|---|---|---|
| ACCEPTED FOR G.F.I BY | *Garvin* | ACCEPTED FOR INSURED BY | | | PAGE *5* | |



**INVENTORY**

*Garvin - Fram, Inc.*

**37156**

| LISTED BY | INSURED | | | | | DATE |
|---|---|---|---|---|---|---|
| | *U.S.A. Fab* | | | | | 8/8/05 |
| EXTENDED BY | ADDRESS | | | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | | | LOT NUMBER |
| | | | | | | 508c117 |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Clausing Mod # 2276 S/no 510549 | 1 | | | | | |
| 2 | Drill Press | | | | | | |
| 3 | Pipe Bender - No Mfg or ID #'s | 1 | | | | | |
| 4 | Heath Eng. Plasma Cutter LASER Mod RC | 1 | | | | | |
| 5 | S/N 580 (NOTE · Had Table thrown out) | | | | | | |
| 6 | Miller Syncrowave 250 DX Welder | 1 | | | | | |
| 7 | S/N LE257854 SH# 903265-W-1 | | | | | | |
| 8 | Miller #CP250TS Welder | 1 | | | | | |
| 9 | S/N R396320 | | | | | | |
| 10 | Miller MP-30E Welder | 1 | | | | | |
| 11 | S/N HH029580 | | | | | | |
| 12 | Miller MP30E Welder | 1 | | | | | |
| 13 | S/N JE782306 | | | | | | |
| 14 | Airco mod. 2.5DTR-234B-5m | 1 | | | | | |
| 15 | SH# 1340-5054 S/N54095.3 | | | | | | |
| 16 | Miller Dialarc H.F. Welder | 1 | | | | | |
| 17 | S/N HF863998 | | | | | | |
| 18 | Miller Deltaweld 450 Welder | 1 | | | | | |
| 19 | S/N JA366253 | | | | | | |
| 20 | Miller Wire feed boom w/ | 1 | | | | | |
| 21 | DVC Dcw-1 Control HK47 + | | | | | | |
| 22 | HK 46 | | | | | | |
| 23 | Miller MP-30E Welder | 1 | | | | | |
| 24 | S/N JA35 8958 | | | | | | |

| SECTION | | | | PAGE TOTAL | |
|---|---|---|---|---|---|
| Machinery | | | | | |

| ACCEPTED FOR G.F.I. BY | | ACCEPTED FOR INSURED BY | | PAGE |
|---|---|---|---|---|
| #9 | | | | 6 |



*Garvin-Fram, Inc.*

37157

| LISTED BY | INSURED | | | | DATE 8/8/05 |
|---|---|---|---|---|---|
| | *USA Fab.* | | | | CHECK TOTAL |
| EXTENDED BY | ADDRESS | | | | |
| CHECKED BY | CITY | STATE | ZIP | | LOT NUMBER 508C117 |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 | Miller CP 250 TS Welder | 1 | | | | |
| 2 | S/N HB 722125 | | | | | |
| 3 | Airco CV 300 Welder | 1 | | | | |
| 4 | S/N HG 022228 stk# 1346-5145 | | | | | |
| 5 | No Mfg Alum bender - pneumatic | 1 | | | | |
| 6 | w/Amer. Standard mF5 = PP-C Ram | | | | | |
| 7 | Rigid #802 Pipe Threader | 1 | | | | |
| 8 | Lincoln Arc Welder | 1 | | | | |
| 9 | S/N A980544 | | | | | |
| 10 | Sm Miller Wire feeder | 1 | | | | |
| 11 | Miller Wire feeder stk# JK-7 | 1 | | | | |
| 12 | Airco PA-3A Welder | 1 | | | | |
| 13 | S/N 3662 | | | | | |
| 14 | Lincoln Elec welder #LN-7 | 1 | | | | |
| 15 | S/N 55541 | | | | | |
| 16 | Airco 2.5 DTB-224-A Welder | 1 | | | | |
| 17 | stk# 1346-5051 S/N T455800 | | | | | |
| 18 | Miller CP 300 Welder | 1 | | | | |
| 19 | S/N JA 432221 | | | | | |
| 20 | Miller MP-65F Welder | 1 | | | | |
| 21 | S/N HE 806928 | | | | | |
| 22 | Miller wire feeder, 30 E | 1 | | | | |
| 23 | style# JA-7 | | | | | |
| 24 | | | | | | |

| SECTION Machinery | | | | PAGE TOTAL | |
|---|---|---|---|---|---|
| ACCEPTED FOR G.F.I. BY | | ACCEPTED FOR INSURED BY | | | PAGE 2 |



INVENTORY

*Garvin · Fram, Inc.*

37158

| LISTED BY | INSURED | | | | | DATE 8/8/05 |
|---|---|---|---|---|---|---|
| | U.S.A. Fab | | | | | |
| EXTENDED BY | ADDRESS | | | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | | LOT NUMBER 508C112 | |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Hobart Beta Mig 250 Welder | 1 | | | | | |
| 2 | Spec # SP7189A-001 | | | | | | |
| 3 | Acme lg. deburring machine | 1 | | | | | |
| 4 | (No I.D. Tag) | | | | | | |
| 5 | DoAll mod C-912A band saw | 1 | | | | | |
| 6 | S/N 368-80425 | | | | | | |
| 7 | Wells Metal Band Saw mod 8M | 1 | | | | | |
| 8 | S/N 17103 | | | | | | |
| 9 | Fearson Horiz drill mod# C#C120B18A | 2 | | | | | |
| 10 | Cat# 100695-01 & No S/N's | | | | | | |
| 11 | Benchmaster Press mod 151 | 1 | | | | | |
| 12 | S/N 57950 | | | | | | |
| 13 | Mubea Ironworkers cutter/Punch | 1 | | | | | |
| 14 | Comlor Size BF10 F | | | | | | |
| 15 | S/N 163/29756/1972 | | | | | | |
| 16 | Delta Rockwell Pedestal grinder | 1 | | | | | |
| 17 | mod # 23256  Type SCS | | | | | | |
| 18 | Central Machinery Co." Bench | 1 | | | | | |
| 19 | grinder on Pedestal Mod# 37822 | | | | | | |
| 20 | Cat# CS-106L+1B | | | | | | |
| 21 | Craftsman T157566 Bench grinder | 1 | | | | | |
| 22 | typer # C.R116F | | | | | | |
| 23 | Craftsman 39719580 Bench grinder | 1 | | | | | |
| 24 | design # C.2391 | | | | | | |

| SECTION | PAGE TOTAL | |
|---|---|---|
| Machinery | | |

| ACCEPTED FOR G.F.I. BY | ACCEPTED FOR INSURED BY | PAGE 8 |
|---|---|---|



INVENTORY

*Garvin-Fram, Inc.*

37159

| LISTED BY | INSURED | | | | DATE |
|---|---|---|---|---|---|
| | U.S.A. Fab | | | | 8/8/05 |
| EXTENDED BY | ADDRESS | | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | | LOT NUMBER |
| | | | | | S08C117 |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| TL 1 | Miller 250 G Welder | 1 | 5990 | | | | |
| 2 | S/N JK5 42213 | | | | | | |
| 3 | Jimda Mod wc-1 Water Cooler | 1 | | | | | |
| 4 | LORS Tecma spot welder | 1 | | | | | |
| 5 | Mod #4622  ANNO # 110-08  JK 94 | | | | | | |
| 6 | Old Lid Mount belt sander | 1 | | | | | |
| 7 | # 5HP-3  No Id # Tag | | | | | | |
| 8 | Big for Hyd. lift truck | 1 | | | | | |
| 9 | Detexto 1000 lb Platform scale | 1 | | | | | |
| 10 | mod# 2328AT4 S/n 620474 | | | | | | |
| 11 | Molex 1 mod# 1482 - Kenco 3K102 mod | 1 | | | | | |
| 12 | S/n's - 790  & 3K8101165 | | | | | | |
| 13 | Press - Small | | | | | | |
| 14 | Yale mod# GLCO50 DENUAE083 | | | | | | |
| 15 | Forklift S/n A823N015425 | | | | | | |
| 16 | Shop built Alum bending mach | 5 | | | | | |
| 17 | EZ Glide H.D. shelf whit | 1 | | | | | |
| 18 | 48"x48" - 3 Shelf 2000 lb cap | | | | | | |
| 19 | E-Z Glide H.D. shelf unit | 1 | | | | | |
| 20 | 36"x36"  3 shelf cap 2000 lb | | | | | | |
| 21 | EZ Glide H.D. shelf unit | 1 | | | | | |
| 22 | 48"x36"  3 shelf cap 2000 lb | | | | | | |
| 23 | Falls Products de-burring | 1 | | | | | |
| 24 | Machine | | | | | | |

| SECTION | | | | | PAGE TOTAL |
|---|---|---|---|---|---|
| Machinery | | | | | |

| ACCEPTED FOR GFI BY | | ACCEPTED FOR INSURED BY | | PAGE |
|---|---|---|---|---|
| #9 | | | | 9 |

**INVENTORY**

*Garvin-Fram, Inc.*

37160

| LISTED BY | INSURED | DATE |
| --- | --- | --- |
| | *U.S.A. Lab* | 8/8/05 |
| EXTENDED BY | ADDRESS | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER |
| | | | | 508C117 |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | Sullair Compressor AVL R L B   mod # | 1 | | | | | |
| 2 | S/N - AKJSHA9 | | | | | | |
| 3 | Ideal Stitcher mod WSTB1240 | 1 | | | | | |
| 4 | S/N WSA 13159      1972 | | | | | | |
| 5 | EZ Glide H.D. shelf unit | 1 | | | | | |
| 6 | 36 x 36  3 shelf  2000 lb cap | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |

| SECTION | | | PAGE TOTAL | |
| --- | --- | --- | --- | --- |
| *Machinery* | | | | |
| ACCEPTED FOR G.F.I BY | ACCEPTED FOR INSURED BY | PAGE |
| #9 | | 10 |

**Garvin-Fram, Inc.**

**37161**

| LISTED BY | INSURED | U.S.A Lab | | | DATE 2/8/05 |
|---|---|---|---|---|---|
| EXTENDED BY | ADDRESS | | | | CHECK TOTAL |
| CHECKED BY | CITY START | STATE | ZIP | | LOT NUMBER 508CU7 |

| Sect | | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|---|
| Pm 1 | | only 9"x46" - 16ga CR shut steel | 300 | | | | | |
| 2 | | " 4'x10' - 12ga " " " | 1 | | | | | |
| 3 | | " 36"x48" - 10ga " " " | 4 | | | | | |
| 4 | | " 48"x96" - 14ga SS. " " | 2 | | | | | |
| 5 | | " 48"x96" - 12ga CR " " | 1 | | | | | |
| WIP 2 | | " 24"x9³/₄"x10³/₄ 10ga TNT | 1500 | | | | | |
| | | HR Sketch Blanks | | | | | | |
| 8 WIP | | " 48"x9³/₄x10³/₄ 10ga TNT | 100 | | | | | |
| | | Blanks | | | | | | |
| 10 WIP | | " 46"x12³/₄ 16ga TNT Blanks | 1000 | | | | | |
| 11 RM | | " ¼"x12ft Stul rod | 150 | | | | | |
| 12 Rm | | " 4"x10ft x ³/₈" flat stul | 4 | | | | | |
| 13 Rm | | " ⅞"x20ft stul Tubing | 13 | | | | | |
| 14 | | " ³/₄"x20ft " " | 10 | | | | | |
| 15 | | " 1½"x20ft " " | 23 | | | | | |
| 16 | | 3"x3" Angle iron ³/₁₆"x20ft | 6 | | | | | |
| 17 | | 1½x1½" " " ³/₁₆x20ft | 8 | | | | | |
| 18 | | ³/₄" x20ft stul Rod | 22 | | | | | |
| 19 | | 1" x20ft " Tubing | 6 | | | | | |
| 20 | | 1" x20ft " Rod | 4 | | | | | |
| 21 | | 1"x2" x20ft " Tubing | 4 | | | | | |
| 22 | | 4"x³/₈" x10ft " flat stock | 12 | | | | | |
| 23 | | 5"x³/₈" x16ft " " " | 12 | | | | | |
| 24 | | 1½x1½x ⅛"x86" Angle Iron | 50 | | | | | |

| SECTION 1- shut Metal 2 - Tubing | | | | | PAGE TOTAL | |
|---|---|---|---|---|---|---|
| ACCEPTED FOR G.F I BY | | ACCEPTED FOR INSURED BY | | | | PAGE 11 |

#9

# INVENTORY

**Garvin-Fram, Inc.**

**37162**

| LISTED BY | INSURED | | | | | DATE 8/8/05 |
|---|---|---|---|---|---|---|
| EXTENDED BY | ADDRESS | | | | | CHECK TOTAL |
| CHECKED BY | CITY | | STATE | ZIP | | LOT NUMBER 508C117 |

INSURED: USA Fab

| Set | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| RM 1 2 | only 3½ x 2¾ x 24" steel block | 6 | | | | | |
| RM 2 3 | " 13"x24"x14ga. sheet steel | 45 | | | | | |
| 3 4"th | " 5⅝ x15⅝ x12ga - For Freeman Seating | 250 | | | | | |
| RM 4 3 | " 2½x2½x12ft - TNT tubing | 188 | $4.275 | | | | |
| RM 5 | " 2½x2½x 22ft - " " | 100 | $4500 | | | | |
| GP 6 3 | " 1" x 2"x 22ft " " | 520 | | | | | |
| RM 7 4 | " 1"x ⅛"x 12ft (OPTO Intl.) C.R. flat stock | 1000 | | | | | |
| RM 8 | " ½"x 24ft Bar Stock (OAKLEY) | 350 | | | | | |
| RM 9 | " 1½x1½x ³/16x24ft Angle iron | 80 | | | | | |
| RM 10 | " 1"x1"x ⅛ x 24ft " " | 400 | $2.507 | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | PAGE TOTAL | | |

SECTION 2/3/4

ACCEPTED FOR G.F.I. BY

ACCEPTED FOR INSURED BY

PAGE 12

#9



*Garvin - Fram, Inc.*

**37163**

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| M | U.S.A. Fab | | | 8/9/05 |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| | | | | |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER |
| | | | | 508C112 |

| (Qu't) | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 Rm | only ¾" x 24 ft Steel tubing 16ga. | 73 2.5 CFT 18 | 36.4. | #7 36.47 | | |
| 2 Rm | " 1¼" x 24 ft 16ga. " " | 5,7 4-5 CFT 61 | 776.49 | 776.49 | | |
| 3 Rm | ¾" x 42½ " ⅛" " " | 16 | 154.14 | 154.14 | | |
| 4 Rm | 1" x 24 ft 1/16 " " | 142 12 CFT 10 | 215.17 | 215.17 | | |
| 5 Rm | ¾x¾ x 24ft 1/16 " " | #3 | 124 | 76.74 | | |
| 6 Rm | 1¼x¼ x 12 ft Bar Stock | 1 | 1.4./. | 54.46 | | |
| 7 Rm | ½"½" x 24 ft 16ga Steel tubing | 1 | 2.8½. | 671. | | |
| 8 Rm | 1" x 5" x 24 ft 16ga " " | 1 | 314/- | 74.88 | | |
| 9 Rm | ⅜ x ¾ x 12 ft Bar stock | 2 | 455/a | 57.87 | | |
| 10 Rm | 1¼" x 24 ft 16ga Steel tubing Rd | 45 | 527.7 | 587.2 | | |
| 11 Rm | 1⅛" x 24 ft 16ga " " Rd | 45 | 533.48 | 533.48 | | |
| 12 Rm | 1 " x 24 ft 16ga " " Rd | 45 | 409.41 | 129.41 | | |
| 13 Rm | 1¼ x 24 ft 14ga " " Rd | 40 | 557 | 557 | | |
| 14 Rm | ½" ½" x 24 ft ⅛ Alum. Sq | 28 | 70. | 700. | | |
| 15 Rm | 1"x1" x 24 ft ⅛ " " Sq | 11 | 233 | 232 | | |
| 16 Rm | 2"x2" x 24 ft ⅛ " " Sq | 2 | 107 | 107 | | |
| 17 Rm | 1" x 24 ft ⅛" " " Rd | 1 | 29.5 | 29 | | |
| 18 Rm | ¾" x ⅛" x12 ft steel flat stock CR | 18 | 137/4 | 94.53 | | |
| 19 Rm | ½ " ¼" x 12 ft cR " " | 10 | 1.14/. | 07.12 | | |
| 20 Rm | 1¼x ⅛" x 12 ft cR Steel flat stock | 15 | .92¾. | 1.31 52 | | |
| 21 Rm | 1⅜" x ⅛" x 24 ft " " " " | 23 | .73/. | 142.12 | | |
| 22 Rm | ¾" x 3/16" x 12 ft SS " " | 2 | .517/. | 56.87 | | |
| 23 Rm | ¾"x½" x 12 ft cR Steel bar stock | 1 | 9.73/. | 5795 | | |
| 24 Rm | 1 " x 12 ft ⅛" Steel tubing | 1 | 1013/. | 53.15 | | |

| SECTION 4-5 | | | | PAGE TOTAL | |
|---|---|---|---|---|---|
| ACCEPTED FOR G.F.I. BY | ACCEPTED FOR INSURED BY | | | PAGE 13 |

**INVENTORY**

*Garvin-Fram, Inc.*

**37164**

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| | *U.S.A. Fab* | | | 3/9/05 |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER 508C117 |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 Rm | only lin ft 4" Sch 10 S SS tubing TYPE 304 | 62 | 759.94 | 759.94 | | |
| 2 Rm | " " " 2" Sch 80 S SS " TYPE 316 | 67 | 1523.16 | 1523.16 | | |
| 3 Rm | " " " 5" Sch 10 S SS " TYPE 316 | 33 | 1276.95 | 1276.95 | | |
| 4 Rm | " 3" x 1" x 20 ft 16 ga " TYPE 304 SS | | 119.67 | 119.67 | | |
| 5 Rm | " 2⅜" x 12 ft alum bar stock rd | 2 | 1.36/in | 353.13 | | |
| 6 Rm | " 1½" x 24 ft Sch 80 SS tubing TYPE 316 | 5 | 17.33/ft | 2326 | | |
| 7 Rm | " 2⅛" x 12 ft ⅛" SS flat stock | 11 | 1.76/in | 332.00 | | |
| 8 Rm | " 2" x 12 ft 3/16 " " " | 1 | 4.65/ | 64.74 | | |
| 9 Rm | " ¾" x ⅜" x 12 ft " " " | 9 | 3.77/# | | | |
| 10 Rm | " 1½" x 1½" x 24 ft ⅛" cr ptul tubing | 10 | 1.34/ft | 331.60 | | |
| 11 Rm | " 1¼" x 4" x 22½" " flat stock | 18 | 2.71/# | 117.04 | | |
| 12 | ↓ Customer stock UFS Imp ↓ | — | | | | |
| 13 Rm | " 3" x 20 ft Sch 10 SS tubing TYPE 316 | 10 | 30.49 | 335.90 | | |
| 14 Rm | " 2" x 20 ft Sch 40 S TYPE 316 | 12 | 26.21 | 314.52 | | |
| 15 Rm | " 1½" x 20 ft Sch 40 S TYPE 316 | 24 | 23.13 | 314.36 | | |
| 16 FP | only Triumph #21327 (case) Part # Tumble Latch Bracket | 5000 | | | | |
| 17 FP | " R.E. sign font bracket | 150 | 15" | 2250 | | |
| 18 Rm | " ¼" x ⅛" x 50" cr flat stock | 2 | 6.62/# | 114.12 | | |
| 19 EQ | " 36" x 30" 30" metal stocking Parts bin | 1 | | | | |
| 20 LTP | " 1" x 1" x 46" ¼ galv tubing | 290 | .63 | 700.56 | | |
| 21 EQ | " Small step ladder - 2 ft | 1 | | 20 | 33% | |
| 22 EQ | " " portable Halogen work light | 1 | | 30 | " | |
| 23 EQ | " " Battery Charger | 1 | — | 70.00 | " | |
| 24 EQ | " " Welding helmet | 1 | — | 25.00 | " | |

| SECTION 5 - 6 | | | | PAGE TOTAL | |
|---|---|---|---|---|---|
| ACCEPTED FOR G.F.I BY | | ACCEPTED FOR INSURED BY | | | PAGE 14 |

INVENTORY

Garvin-Fram, Inc.

37165

| LISTED BY | INSURED | | | | DATE |
|---|---|---|---|---|---|
| | U.S.A. Fab | | | | 2/9/05 |
| EXTENDED BY | ADDRESS | | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | | ZIP | LOT NUMBER |
| | | | | | 508c(1) |

| Dist | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 EQ | only 36"x48" metal stacking pallet | 2 | 10.⁰⁰ | 20.⁰⁰ | | | |
| 2 Furn. TL | New composite desk | 1 | 100.⁰⁰ | 100.⁰⁰ | ✓ | | |
| 3 TL FP | TNT Pier 1 bent Tube | 281 | .25 | 70.25 | | | |
| 4 TL WIP | 1 5/8" x 39" 18ga galv Tubing | 50 | 3.⁰⁰ | 150.⁰⁰ | | | |
| 5 EQ | 40"x40" wire basket | 1 | 50.⁰⁰ | 50.⁰⁰ | | | |
| 6 | | 34 | | | | | |
| 7 Furn. TL | 18"x32"x53" metal parts cabinet | 1 | | 100.⁰⁰ | 33% | | |
| 8 TL WIP | 17"x8" orange Bedding aide support for EZ glide | 34 | 7.50 | 255.⁰⁰ | | | |
| 9 WIP | Bracket for pipe racks | 13 | 6.25 | 81.25 | | | |
| 10 EQ TL | Floor fan | 1 | 252.⁰⁰ | 252.⁰⁰ | 33% | | |
| 11 EQ | Asst tips for tecna spot welder | 72 | | | | | |
| 12 EQ | lot asst spot welder parts | 1 | | | | | |
| 13 EQ | Sets of gauges for mig welders | 5 | | | | | |
| 14 TL Supplies | lot small hardware in parts cab | 1 | 100.⁰⁰ | 100.⁰⁰ | | | |
| 15 Furn. | 24"x18"x32" metal HD cabinet | 1 | | | | | |
| 16 EQ | torch gun for oxy acet. torch | 1 | | 135.⁰⁰ | 33% | | |
| 17 EQ TL | set of hoses | 1 | | 45.⁰⁰ | 33% | | |
| 18 EQ TL | gauge set | 1 | | 75.⁰⁰ | 33% | | |
| 19 TL WIP | Am R.E. sign frame 3/8" rd bar Bent 90° | 32 | 4.9 ea x | 150.⁰⁰ | | | |
| 20 EQ TL | 2 wheeler | 1 | | 40.⁰⁰ | | | |
| 21 EQ | Clarion Chris die asst | 5 | | | | | |
| 22 EQ | Furniture Co. | 6 | | | | | |
| 23 EQ | American Tourister attache case dies | 4 | | | | | |
| 24 EQ | Modular Plastic | 4 | | | | | |

| SECTION | | | | | PAGE TOTAL | |
|---|---|---|---|---|---|---|
| 6 | | | | | | |

| ACCEPTED FOR G.F.I BY | | ACCEPTED FOR INSURED BY | | PAGE |
|---|---|---|---|---|
| J. Oliveri | | | | 15 |

R9

INVENTORY

*Garwin - Fram, Inc.*

37166

| LISTED BY | INSURED | U.S.A. Ind | DATE 8/9/05 |
| EXTENDED BY | ADDRESS | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER 565-117 |

| W/F | DESCRIPTION | QUANTITY | PRICE | | |
|---|---|---|---|---|---|
| EB 1 | only Finishwork die | 1 | — | | |
| EB 2 | " Weingard tr die | 3 | — | | |
| WIP 3 | " 48"x48" EZ glide shelves | 3 | | | |
| WIP 4 | " RE sign channels 32"long 1⅛"x½" | 100 | 1.01 | 101⁰⁰ | |
| EB 5 | " Arm Blast mod.# 100 Sand blaster | 1 | | | |
| FP 6 TL | " SX-69-24 Speaker stands | 9 | 25 each | | |
| FP TL 7 | " 53-6.57-20 " " | 22 | 20 each | | |
| FP TL 8 | " 53-6.57-24 " " | 6 | 22⁰⁰ each | | |
| FP TL 9 | " -6.19-24 " " | 4 | 22⁰⁰ each | | |
| FP TL 10 | " 6.9x20 " " | 1 | 20⁰⁰ each | | |
| FP TL 11 | " Asst Speaker stands NO ID | 40 | 25 each | | |
| Supplies 12 TL | " #4138 Cenn Milacron grinding wheel | 21 | 6²⁰ each | | |
| Supplies 13 TL | " # 10A46-18-6U Nitex " " | 14 | 75⁵⁰ | | |
| WIP TL 14 | " 1"x1"x4ft 16ga CR Steel tubing | 520 | .51 | .? | |
| WIP TL 15 | " 1"x1"x4ft 16ga " " " | 278 | .52 | 145.? | |
| WIP TL 16 | " 1"x1"x3ft 16ga " " " | 226 | .51 | | |
| WIP TL 17 | " 1"x1"x3ft 16ga " " " | 480 | .50 | 1?5?.? | |
| WIP TL 18 | " 1"x1"x50" 16ga " " " | 432 | .52 | 956.?? | |
| WIP TL 19 | " 1"x1"x12ft 16ga " " " | 270 | .52 | 1674.?? | |
| WIP TL 20 | " Speaker stand base 7"x10" | 1074 | 4⁰⁰ each | 4216.?? | |
| 21 | for Model# US9-825-1R | | | | |
| WIP TL 22 | " Speaker Pedestal only -18½" for | 112 | 0⁵⁰ each | | |
| 23 | model US1-6.57-20 | | | | |
| WIP TL 24 | " 6.5-7 Speaker top plate | 135 | 2⁵⁰ each | 337.⁵⁰ | |

| SECTION 6-7 | | | | PAGE TOTAL |
| ACCEPTED FOR G.F.I BY | ACCEPTED FOR INSURED BY | | | PAGE 16 |
| #9 | | | | |

# INVENTORY

## Garvin-Fram, Inc.

| LISTED BY | INSURED | | | | DATE | |
|---|---|---|---|---|---|---|
| | U.S.A. Lab | | | | 8/8/05 | |
| EXTENDED BY | ADDRESS | | | | CHECK TOTAL | |
| CHECKED BY | CITY | | STATE | ZIP | LOT NUMBER | |
| | | | | | 508517 | |

3|1|67

| | | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | WIP TL | only 7.5-8 Spinkles top plates | 135 | 3.50 | 472.50 | | | |
| 2 | WIP TL | " 8x9 " " " | 90 | 3.75 | | | | |
| 3 | WIP TL | " 18½" long " Pedestal for | 70 | 4.50 | | | | |
| 4 | | # US1-657-20 Spinkles stand | | | | | | |
| 5 | WIP TL | " 4½x9 Spinkles top plate | 100 | 3.00 | 300.00 | | | |
| 6 | WIP TL | " 6"x9" " " " | 288 | 3.25 | | | | |
| 7 | WIP TL | " Stanchions for US9-825-18 | 55 | | | | | |
| 8 | | Spinkles stands | | | | | | |
| 9 | WIP TL | " Uprights for US1-657-24 | 12 | 9.50 | | | | |
| 10 | | Spinkles Stands | | | | | | |
| 11 | WIP | " Box plastic caps for spinkle stands | 6 | | | | | |
| 12 | WIP P | " " " " " " " | 1 | | | | | |
| 13 | | in ship of 4 typs ea. | | | | | | |
| 14 | TL FP | " Cross arm real Est sign frame Black | 29 | 6.25 | 181.25 | | | |
| 15 | TL FP | " " " " " " gray | 100 | 6.25 | 625.00 | | | |
| 16 | FP TL | " " " " " " Black Rose | 53 | 6.25 | 331.25 | | | |
| 17 | FP TL | " " " " " upper-yellow sign frame | 72 | 6.25 | 421.25 | | | |
| 18 | FP TL | " " " " " " Yellow base | 110 | 6.25 | 687.50 | | | |
| 19 | FP TL | " " " " " " gray " | 94 | 6.25 | 587.50 | | | |
| 20 | Supplies | " 55 gal drum, cutting oil | 2/3 | | | | | |
| 21 | EQ | " pr cat lamps | 1 | | | | | |
| 22 | Supplies | Cs 200/ea. 30x60 trash bags - blue | 13 | 32. | | | | |
| 23 | EQ | Only soft Porter conveys for Band Saw 8/15 | 1 | | | | | |
| 24 | EQ | " 2"x46½"x36" Rolling metal shop cart | 2 | | | | | |

SECTION 7

PAGE TOTAL

| ACCEPTED FOR G.F.I BY | J. Garvin | ACCEPTED FOR INSURED BY | | PAGE 17 |
|---|---|---|---|---|

INVENTORY

*Garvin-Fram, Inc.*

37168

| LISTED BY | INSURED | | | DATE | |
|---|---|---|---|---|---|
| AH | *U.S.A. Fab* | | | | |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL | |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER | |

| Sect | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 EQ | only 30"x40" Wire basket | 1 | | 40.⁰⁰ | | | |
| 2 EQ | 5500 lb Pallet Jack | 1 | | — | | | |
| 3 WIP TL | CUST. MASON 1"x1"x28" 16ga CR Steel tubing | 281 | .53 | # 241 | 12 | | |
| 4 EQ | 25"x48"x42 Rolling shop carts | 6 | | | | | |
| 5 TL FP | 42"x24" Complete steel St. sign frames | 55 | 17.50 | 962.50 | | | |
| 6 TL WIP | NO Tracks 48"x36" E-Z Glide shelves | X 16 | 85." | | | | |
| 7 TL WIP | 36"x36" EZ Glide shelves "Tracks | 3 | 160" | | | | |
| 8 TL WIP | 48"x48" " " tops | 10 | 95.⁰⁰ | | | | |
| 9 TL WIP | 36"x48" " " track assy | 5 | 22.50 | | | | |
| 10 TL WIP | 48"x48" " " shelf 4 track | 3 | 140" | | | | |
| 11 TL WIP | CUST. MASON 1"x1"x36½ 16ga CR steel tubing | 820 | .53 | $ 5x7 | 16 | | |
| 12 TL WIP | 1"x1"x20" 16ga CR steel tube "holes | 170 | .53 | 1.17 | 17 | | |
| 13 EQ | 30"x40" Wire basket | 2 | — | 50.⁰⁰ | | | |
| 14 TL WIP | MASON 1"x1"x12" 16ga CR steel tube "hole | 80 | .53 | 13 | | | |
| 15 TL FP | W Jarke 4" Rock 23"x16" Material storage shelf | 30 | — | | | | |
| 16 TL FP | Steel Jarke 36"x48" stacking pallets | 18 | 75. ea | 1350.⁰⁰ | | | |
| 17 TL WIP | R.E. sign - top only 90° Radius | 182 | 5.62 | 102.84 | | | |
| 18 EQ | 42"x48" chest wire basket | 1 | — | | | | |
| 19 EQ | 38"x30" tall " " | 1 | — | | | | |
| 20 TL WIP | Sm TNT shelf 20"x24"x1¼" 12ga | 200 | 75c | 150.⁰⁰ | | | |
| 21 TL WIP | 1"x1"x2" 16ga CR tube | 150 | .53 | 13 | | | |
| 22 EQ | 20"x32"x22" Sm wire basket | 1 | — | | | | |
| 23 TL WIP | CUST. C.P. BAY 39½"x26½" Roll cage side assy | 355 | 75c ea | 266.⁵⁵ | | | |
| 24 EQ | Yellow 42½"x27½"x40½" Rolling H.D. shop cart | 1 | — | | | | |

| SECTION | | | PAGE TOTAL | |
|---|---|---|---|---|
| 7 | | | | |

| ACCEPTED FOR G.F.I. BY | ACCEPTED FOR INSURED BY | P |
|---|---|---|
| J. Garvin | | |
| #9 | | |

# INVENTORY

**Garvin-Fram, Inc.**

37169

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| | U.S.A. Lab | | | 8/8/05 |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER 508 0117 |

| Dict? | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 TL FP | Jarke Bakery Tray Assy only 148" material shelf. HHHHH | 5 | 150 each | 750 00 | | |
| 2 EQ | " TNT 48"x24" Alum fig. shop built | 1 | | | | |
| 3 WIP | " 1"x1"x22" 16ga galv. tubing GROBAN ceiling | 145 | .65 | $167 | 65 | |
| 4 TL WIP | " 1"x1"x28" 16ga C.R. Tubing R.E. Sign | 360 | .53 | $436 | 00 | |
| 5 TL FP | 36"x48" H.D. Metal pallet Jarke | 30 | 45 00 | | | |
| 6 TL WIP | " 5½"x1"x21⅞" C.R. Channel Groban 16ga | 90 | 4.75 | | | |
| 7 TL FP | " Sm TNT shelf 5½x36"x1¼" Jarke | 24 | 10 50 | | | |
| 8 TL FP | " Med " " 9¾"x36"x1¼" | 14 | 12 50 | | | |
| 9 TL FP | " Lg " " 13¾"x36"x1¼" | 30 | 15 00 | | | |
| 10 TL WIP | " EZ Glide 36" track Jarke | 100 | 10 00 | | | |
| 11 TL WIP | " " " Side frames 72"x48" | 5 | 4.75 | | | |
| 12 TL WIP | " " " " 60"x48" | 2 | 4.50 | | | |
| 13 EQ | " Shop built alum bender on | 1 | — | | | |
| 14 | 30"x84" Work bench | | — | | | |
| 15 TL WIP | " Freedman Seating Alum. Trim-Small Basic 1"x79" | 65 | | | | |
| 16 EQ | " Window Box fans | 3 | — | | | |
| 17 | " Chi. Elec. Port. Halogen Lamp P30868 | 1 | — | | | |
| 18 | " Dewalt Elec. drill #DW106 | 1 | — | | | |
| 19 | " Drill Master 4½" angle grinder Item #150 | 1 | — | | | |
| 20 | " 42" slide clamp | 1 | — | | | |
| 21 | " Welding helmet | 1 | — | | | |
| 22 | " 28"x72" Metal Work bench | 1 | — | | | |
| 23 | " gauge for mig welder | 1 | — | | | |
| 24 | " 48"x82" H.D. Work bench Superj Welding Station | 1 | — | | | |

| SECTION 7 | | PAGE TOTAL | |
|---|---|---|---|
| ACCEPTED FOR G.F.I. BY  J. Cabrera | ACCEPTED FOR INSURED BY | | PA |
| #9 | | | |

# INVENTORY

## Garvin-Fram, Inc.

3770

| LISTED BY | INSURED | | | | DATE 8/9/05 |
|---|---|---|---|---|---|
| EXTENDED BY | U.S.A. Fab | | | | CHECK TOTAL |
| ADDRESS | | | | | |
| CHECKED BY | CITY | STATE | ZIP | | LOT NUMBER SOFC117 |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 EQ | only 96"x48" H.D. work bench / welding station | 1 | — | | | | |
| 2 EQ | " 4½' Wilton H.D. Bench w/vise | 1 | — | | | | |
| 3 Rm | " 1"x10ft ⅛" CR flat stock | 40 | — | | | | |
| 4 Rm | " 3"x6ft ⅛" Alum tubing for air box | 135 | — | | | | |
| 5 Rm | Ptn 8/ea # P4-002-21 | 10 | — | | | | |
| 6 Supplies | Box Plastic sheeting for welding curtain | 1 | — | | | | |
| 7 EQ | only frames for welding curtain 6'x8' BLUE | 2 | — | | | | |
| 8 EQ | " Rolling Welding Curtain · Adj 136"x72" | 1 | — | | | | |
| 9 | " Welding Helmet | 2 | — | | | | |
| 10 | " Chaol 18V Cordless drill | 1 | — | | | | |
| 11 | " 4" H.D. Bench vise | 1 | — | | | | |
| 12 | " 48"x72" H.D. Work Bench / welding station | 1 | — | | | | |
| 13 | " TNT welding jig | 1 | — | | | | |
| 14 | " Baldor Bench spindle w/pedestal ⅓hp Cat#662 | 1 | — | | | | |
| 15 | " 100"x72" Welding Curtain | 1 | — | | | | |
| 16 TL WIP | " R.E. Top sect Radius 90° 1"x1" tube | 11 | 5.65ea | 62.15 | | | |
| 17 Supp | " Asst Grinding wheels | 4 | 1.27 | 508 | | | |
| 18 Supp | Box 10/# IVN42 Weldcraft Nozzles | 9 | — | | | | |
| 19 WIP | only Generatro Fuel cage - complete | 1 | 45ea 8.30 | 45.00 | | | |
| 20 TL Rm | " ⅝"x¾"x24ft 16ga CR Tubing | 41 160 | 1.37 | 526.20 | | | |
| 21 TL Rm | " ¼"x¼"x24ft ⅛ " " | 2 | -73/ft | 35.04 | | | |
| 22 Rm | " 1¼ Rd Tubing ⅛ SS Type 304 24 ft long | 21 | | | | | |
| 23 EQ | " Jabke drum Cart - 96"x28"x29" | 1 | | | | | |
| 24 TL Rm | " 1"x1"x12ft 16ga CR stel tubing | 130 | -52 | $211 | X | | |

| SECTION 7-8 | | PAGE TOTAL |
|---|---|---|

| ACCEPTED FOR G.F.I BY | ACCEPTED FOR INSURED BY | PA |
|---|---|---|

#9

**INVENTORY**

*Garvin-Fram, Inc.*

3 7 1 7 1

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| | U.S.A. Lab. | | | 8/9/85 |

| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
|---|---|---|---|---|

| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER |
|---|---|---|---|---|
| | | | | 508-0117 |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 EQ | only 72"x48" H.D. Wrk Bench / welding station | 1 | | | | |
| 2 Supp | LS 33/16 # ER705-1a Harris welding wire .035 | 3 | | | | |
| 3 Supp | LS 35/16 # .045 " " | 2 | | | | |
| 4 EQ | only Tanks 75% Argon 25% CO₂ | 7 | | | | |
| 5 | " Tank Cart | 1 | | | | |
| 6 | " Miller Matic Wire feed #30A | 1 | | | | |
| 7 | " Tank cart w/ 1 torch + 2 sets of | 1 | | | | |
| 8 | Hoses + gauges | | | | | |
| 9 | " Vise grip clamps | 15 | | | | |
| 10 | " 84"x60" H.D. Work bench / welding station | 1 | | | | |
| 11 | " Chicago Stim #91223 4½" angle grinder | 1 | | | | |
| 12 | " lg bench Grinder - lg | 1 | | | | |
| 13 | " Jig for Cokle signs - shop built | 2 | | | | |
| 14 | " 1"x1" tank Holds for generator | 24 | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |

| SECTION 9 | | PAGE TOTAL | |
|---|---|---|---|

| ACCEPTED FOR G.F.I. BY | | ACCEPTED FOR INSURED BY | | PAGE |
|---|---|---|---|---|

#9

INVENTORY

*Garvin-Fram, Inc.*

37172

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| | U.S.A. Fab. | | | 8/16/05 |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER 5055117 |

| Lot 9 | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 EQ | only 8'x6' Welding Curtain | 1 | | | | | |
| 2 TL WIP | " m.p Seating bottom frame mach. chair | 70 | EACH 4C | | | | |
| 3 TL WIP | " " " Main. Assy " | 62 | EACH 2C | | | | |
| 4 EQ | " Cast iron hole saws | 25 | | | | | |
| 5 " | " Dayton 36" fan # 3C674C | 1 | | | | | |
| 6 " | " Stone Saw mod# 26701201 | 1 | | | | | |
| 7 | S/N 11402 | | | | | | |
| 8 Supp TL | " #36 W231 abrasive discs | 10 | .43 | 4.30 | | | |
| 9 Supp | " # 41U30 Weldcraft gas hose 25 ft | 2 | | | | | |
| 10 Supp | " #41 V 29 ATC Torch hose w/ fittings | 1 | | | | | |
| 11 EQ | " Air King floor fan | | | | | | |
| 12 TL WIP | " Mike Clausler Back frame wire spool holder | #27 | EACH 55 | | | | |
| 13 FP | " " " complete spool holder | 2 | | | | | |
| 14 EQ | " Custom Seating Dies | 2 | | | | | |
| 15 " | " 58"x92" work bench Weld. Station | 1 | | | | | |
| 16 EQ | " Chi Elec Angle grinder # 91223 | 2 | | | | | |
| 17 " | " Dumore Hand grinder Cat# 10 151 | 1 | | | | | |
| 18 | S/N 8203 9864 | | | | | | |
| 19 TL WIP | " Opto # 42 Hanger assy for tool | 100 | EACH 25 | | | | |
| 20 EQ | " Miller Style U-I-A-1 Wire feed | 1 | | | | | |
| 21 EQ | " Pneumatic Wire feed for alum | 1 | | | | | |
| 22 EQ | mod # MK-3A S/N 10023 A5 | | | | | | |
| 23 TL WIP | " Mike C. 3/4x3/4x8" steel Post | 100 | EACH 25 | | | | |
| 24 | " Chi Elec #44141 Die grinder | | | | | | |

| SECTION 9 | | | PAGE TOTAL | |
|---|---|---|---|---|

| ACCEPTED FOR G.F I BY J. Chavez | ACCEPTED FOR INSURED BY Candace Tering | PAGE |
|---|---|---|

#9

# INVENTORY

**Garvin-Fram, Inc.**

37173

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| | U.S.A. Fab. | | | 8/10/05 |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER |
| | | | | 508C16/ |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 TL WIP | only Metal 4x4 cap for R.E. sign | 100 | 20⁵¹/₁₆" | | | |
| 2 TL WIP | " R.E. sign part - 33¼"x3"x ⁵/₈" | 27 | 9²⁵/₆₄ | | | |
| Supp TL | " Asst Grinding discs | 45 | .47 | 21.15 | | |
| 4 Supp TL | " Box/3000 = 186 chrome D ring | 1 | .45 | | | |
| 5 EQ | " Miller # RFCS-14HD foot pedal | 1 | | | | |
| 6 RM | " 18" SS Hinge | 35 | | | | |
| 7 TL WIP | " Wire support for chair mouth MLP Seating | 150 | 2⁶⁴/₁₀ | | | |
| 8 TL WIP | " OPTO LOD ring bracket | 100 | 4⁵⁹/₁₀ | | | |
| 9 EQ | " Chicago ½"×40" hammerh drill | 1 | | | | |
| 10 TL WIP | " OPTO # 49 12" Rail | 75 | 4⁶⁴/₁₀ | | | |
| 11 TL WIP | " " Bushing 1³/₈" w/ flange | 1000 | 1 | 1000 | 1 X | |
| 12 TL WIP | " " Threaded inserts w/ flange | 1500 | .50 | 750 | | |
| 13 TL WIP | " " " " w/ out flange | 500 | .50 | 250 | | |
| 14 TL WIP | " ³/₄"×³/₄"×28" 16ga CR Tubing for Mike Claudio | 470 | 1.50 EAC | | | |
| 15 EQ | " 26"x16"x24" Jake mod DK mini mobile | 1 X 24 | | | | |
| 16 EQ | " 30"x54"x52" Rolling HD ShopCart | 1 | | | | |
| 17 EQ | " 30"x36"x36" " " " " | 1 | | | | |
| 18 EQ FB | " E-Z Glide 36"x36" HD shelfunit 3 shelves | 2 | | | | |
| 19 EQ | " Asst dies on E-Z glide racks | 17 | | | | |
| 20 EQ | " " " " (for Trueman) | 5 | | | | |
| 21 EQ | " Shop built alum benders on. | 1 | | | | |
| 22 | 35"x72" Bench | | | | | |
| 23 EQ | " 36"x36"x36" Metalshopcart w/ | 1 | | | | |
| 24 | Clamps for bending alum | | | | | |

SECTION  9-10-11

| | | PAGE TOTAL | |
|---|---|---|---|

| ACCEPTED FOR G.F.I. BY | J. Garvin | ACCEPTED FOR INSURED BY | Candace Forina |
|---|---|---|---|

**INVENTORY**

*Garvin - Fram, Inc.*

3 7 1 7 4

| LISTED BY | INSURED *U.S.A. Fab* | | | DATE 8/10/05 |
|---|---|---|---|---|
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER 508C117 |

| Art # | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 EQ | only 60"x25"x36" metal rolling bench | 1 | | | | |
| 2 EQ | " 39x32 Wire Part bin | 2 | | | | |
| 3 TL WIP | " MASON 1"x1"x18½" 14ga. w/ cutouts on end | 200 | .52¢ | $160 | | |
| 4 EQ | " E2 Slide shelf 48"x40" | 1 | | | | |
| 5 EQ | " asst radius dies for bending mach on E2 Slide rack | 15 | | | | |
| 7 EQ | " Dayton 36" fan | 1 | | | | |
| 8 EQ | " Air King floor fan | 1 | | | | |
| 9 EQ | " Lot asst tooling + New for machine | 1 | | | | |
| 10 | all looks ok - see pictures | | | | | |
| 11 EQ | " Chicago Elec. reciprocating saw | 1 | | | | |
| 12 " | " Delult Model Drill #DW101 | 1 | | | | |
| 13 " | " Dayton 36" fans | 2 | | | | |
| 14 TL EQ | " Water pump for Summit drill press | 1 | 155 ™ | 150 ™ | 33% | |
| 15 EQ | " Milwaukee H.D. Grinder | 1 | | | | |
| 16 " | "    "    HD ½" drill 1140-1  cat # | 1 | | | | |
| 17 | " Chig 156 ½" Hammer drill | 1 | | | | |
| 18 ' | " Milwaukee 2" H.D grinder 5192  cat# | 2 | | | | |
| 19 | " Advance 300 B floor sweeper | 1 | | | | |
| 20 | " asst Dies for Richards Pipe | 10 | | | | |
| 21 | bender (2/14) | | | | | |
| 22 Sump TL | " 20x14½x11" Corrugated box | 500 | 2.5¢ and | 13.5¢ ™ | | |
| 23 " | " 6½x15x15"   "   " | 400 | 2 " | 8¢ ™ | | |
| 24 " | " 12x6x6"   "   " | 400 | 3 " | 8¢ 55 | | |

| SECTION 11 - 12 | | | PAGE TOTAL |
|---|---|---|---|

| ACCEPTED FOR G.F.I. BY | ACCEPTED FOR INSURED BY *Candace Ferina* | PAGE |

**INVENTORY**

## Garvin-Fram, Inc.

37175

| LISTED BY | INSURED *U.S.A. Fab.* | | DATE 8/16/05 |
|---|---|---|---|
| EXTENDED BY | ADDRESS | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER 508-117 |

| | | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|---|
| 1 TL SUPP | only | 1"x5½"x62" wood planks | 80 | | | | |
| 2 TL WIP | " | 1"x1"x20½" 16ga tube - Truman | 600 | .53 | $525 | CC | |
| 3 TL WIP | " | 2½"x2½"x132 ⅛" " Truman | 200 | 2.50 EA | | | |
| 4 TL WIP | " | OPTO Bent tubing CR ⌄ | 12 | 20.10 | 340. | | |
| 5 TL WIP | " " " " CR ⌐ | | 12 | 10.30 | 141. | | |
| 6 TL WIP | " " " " CR ⌣ | | 9 | 19.60 | 176. | | |
| 7 TL WIP | 28" Jarke cross prs for "Payback Pallet" | | 932 | 3.00 | 1964. | | |
| 8 TL WIP | " " 38" " | | 200 | 2.50 | 500. | | |
| 9 TL SUPP | " Keyland lobes | | 30 | 5. | 150.00 | | |
| 10 WIP | " 48"x48" EZ Glide track (orange) | | 20 | 1.00 | 130.00 | | |
| 11 WIP | " 48"x48" " " Shelf (blue | | 20 | 1.00 | 20.00 | | |
| 12 FP | " 36"x48" Jarke Work Platform 3648c | | 4 | 2.50 | 10.00 | | |
| 13 EQ | " 36"x36" EZ Glide shelf unit | | 1 | 1.00 | 1.00 | | |
| 14 EQ | " Asst Shop dies on EZ glide rack | | 10 | | | | |
| 15 FP | " Jarke 15"x23" Mini - Module | | 90 | | | | |
| 16 EQ | " Venisator (Sample?) | | 1 | 45.00 | 45.00 | 33% | |
| 17 SUPP TL | " Max Cap. 2000 lb stickers for glide | | 200 | 1.50 | 300. | | |
| 18 EQ | " Truman Die | | 1 | | | | |
| 19 TL WIP | " Optic #42 Curved Hanger pair | | 140 | $10 | 1400. | | |
| 20 WIP | " 1½"x1½"x86 Angle iron 4 holes | | 45 | | | | |
| 21 | for Jarke mutual Rack | | | | | | |
| 22 TL WIP | " Proban 21⅞"x11¼" 10ga MOTOR Support | | 150 | 6.00 | 900. | | |
| RUN TL | " Rolling task chairs w/ Arms | | 2 | 65 | 130 | 33% | |
| RUN TL | " " " " w/out Arms | | 1 | . | 40 | 33% | |

| SECTION 12 | | PAGE TOTAL |
|---|---|---|

ACCEPTED FOR G.F.I. BY *J. Garvin*    ACCEPTED FOR INSURED BY *Candace Ferina*

INVENTORY

Garvin · Fram, Inc.

37126

| LISTED BY | INSURED | | | DATE |
|---|---|---|---|---|
| JN | U.S.A. Fab | | | 8/10/05 |
| EXTENDED BY | ADDRESS | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER |
| | | | | 5080117 |

| Acct | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 WIP (13) | 96" Sm. only Freedman alum ast trim Barris | 55 | | | | | |
| 2 WIP (13) | " 1"x1"x22' 16ga. CR steel tubing | 400 | .53 | E 381 | 16 | | |
| 3 TL WIP | 4 1"x1"x22 5/8 16ga " " " | 90 | .53 | $ 105 | 16 | | |
| 4 TL WIP | " 1 1/2x13 5/8 x 1/4 CR flatstock | 400 | | | | | |
| 5 TL WIP | " 1 1/2 x 15 3/4 x 1/4 " " " " | 100 | | | | | |
| 6 TL WIP | " 7/8 x 25 1/2" CR tubing | 45 | | | | | |
| 7 EQ | " Asst dies for bending machine | 65 | | | | | |
| 8 | for Pines pipe bender (2/3) | | | | | | |
| 9 EQ | " Asst small dies for brake Press | 22 | | | | | |
| 10 TL Furn | " Rolling blue vinyl desk chair | 1 | | 70 | | 33% | |
| 11 TL Furn | " Blue Fabric side chair | 1 | | 130 | | 33% | |
| 12 TL Furn | " " " " " | 1 | | 130 | | 33% | |
| 13 TL WIP | " 1" x 5/8 x 2" drilled Mason corner Bracket | 3000 | | | | | |
| 14 TL Supp | " Rolls 18" Stretch film | 4 | 11.50 | 5C T. | | | |
| 15 EQ | " Binks Busy Bee Pump # 41-14500 | 6 | | | | | |
| 16 TL WIP | " 8"x28" 16ga CR sheet stock OAKLEY | 15,800 | .35 | 5 u 50 K | | | |
| 17 SCR | Note: majority avail w/ Bldg scrap | | | | | | |
| 18 CR EQ | " Unipunch dies - asst | 124 | | | | | |
| 19 Furn | " Metal Parts cabinets | 4 | | | | | |
| 20 EQ | " Die fixture for Stripit Machine #62501 | 1 | | | | | |
| 21 supp TL | " 10" Caster Wheels | 12 | | | | | |
| 22 EQ | " Asst Press Brake dies - medium size | 50 | | | | | |
| 23 | 28" long to 72" long | | | | | | |
| 24 | | | | | | | |

| SECTION | | PAGE TOTAL | |
|---|---|---|---|
| 13 - 14 | | | |
| ACCEPTED FOR G.F.I. BY | J. Valencia | ACCEPTED FOR INSURED BY | Candace Ferrol |

#9

# INVENTORY

## Garvin - Fram, Inc.

37127

| LISTED BY | INSURED | | | | DATE |
|---|---|---|---|---|---|
| | U.S.A. Fab | | | | 8/18/05 |
| EXTENDED BY | ADDRESS | | | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | | LOT NUMBER 505C117 |

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 CR EA 2 | only Asst Press brake dies Small 6" to 28" | 72 | | | | | |
| 3 CR EA 4 | " Asst Press brake dies large 60" + larger | 70 | | | | | |
| Supp TL | Ca/room per metal top for R.C. signs | 2 | | | | | |
| Supp TL 7 | only Super Cameo A24-R8 -5x1/4x7/8 grinding wheels | 400 | .78 | 313.00 | | | |
| Supp TL 9 | only Linn Miltronon grinding wheels #AK242-R9-89-2 | 31 | 2.98 | 93.38 | | | |
| Supp TL 11 | only Linn Mil. grinding wheels #A224-V9-81.7444-188 | 43 | 3.03 | 130.29 | | | |
| Supp TL 13 | only CMRA Crusadis grinding wheel # 370-140-250 | 12 | 8.15 | 81.50 | | | |
| Supp TL 15 | Ca/pes HQF Part # 1/4-20x1/2 Head 90° weld stud | 2 | | 6.00 | | | |
| Supp TL 17 | Only asst lg grinding wheels - -cm AK242 - cm A224 - cmRA 320#46-250 | 500 | .42 | 210.00 | | | |
| WIP IL | only metal stakes for R.C. sign | 300 | 1.50 EACH | | | | |
| WIP TL 20 | " Gas tank supports (for GROBAN Generator) | 80 | 1.75 EA | | | | |
| WIP TL | " 1" Rd x 35" Aluminitubing | | | | | | |
| WIP TL | only OPTO #591-32 flor/will mount PART | 3000 | .75 EA | | / | | |
| Supp TL | " 1/4x20 Nuts (KW) | 2000 | | $200 | | | |
| Supp TL | " 5" dia. Swivel mount casters | 4 | 5.00 EACH | | | | |
| Supp TL | " 5" " linecaut " " | 60 | 1 | 60 | | | |

| SECTION 14 | | | | | PAGE TOTAL | |
|---|---|---|---|---|---|---|
| ACCEPTED FOR G.F.I BY  J. Garvin | | ACCEPTED FOR INSURED  Candace Jenned | | | P | |

# INVENTORY

## Garvin-Fram, Inc.

37128

| LISTED BY | INSURED | | DATE |
|---|---|---|---|
| J.M. | U.S.A. Lab. | | 8/10/05 |
| EXTENDED BY | ADDRESS | | CHECK TOTAL |
| CHECKED BY | CITY | STATE ZIP | LOT NUMBER |
| | | | 508-117 |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 | only 6" dia. Swivel mt casters  *plastic* | 19 | 19 | | | |
| 2 | " 8" " " " " | 12 | 12 | | | |
| 3 | " 5" " " " metal Casters | 14 | 14 | | | |
| 4 | " 6" " " " " " | 21 | 21 | | | |
| 5 | " 9½" " " " " " | 2 | 2 | | | |
| 6 | " 8" " Plastic Caster wheels | 13 | 13 | | | |
| 7 | — Misc — *walk through* | | | | | |
| 8 | only UNIVOTCH Notching Die | 1 | | | | |
| 9 | # B2010 LN | | | | | |
| 10 | only Kenmore microwave oven | 1 | | 125 | 33% | |
| 11 | " Magic chef microwave " | 1 | | 105 | 33% | |
| 12 | " Hotpoint Refrigerator | 1 | | | | |
| 13 | " Eureka whirlwind sweeps | 1 | 50.00 | 50.00 | 33% | |
| 14 | " Snack Vending machines | 2 | | | | |
| 15 | " Coke " " " | 2 | | | | |
| 16 | " Coffee " " " | 1 | | | | |
| 17 | EQ TL " 24 ft long material Racks — | 3 | $2400 | 7200 | 33% | |
| 18 | in fire area - held tubing + bar stock | | | | | |
| 19 | EQ TL " 12 ft Material rack - bent out 1/scrap | 1 | $1450 | 1400 | 33% | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |

| SECTION | | | PAGE TOTAL |
|---|---|---|---|
| 14 — Misc | | | |

| ACCEPTED FOR G.F.I. BY | ACCEPTED FOR INSURED BY | |
|---|---|---|
| L. Garvin | Candace Ferino | |

# INVENTORY

## Garvin-Fram, Inc.

371.29

| LISTED BY | INSURED | | DATE |
|---|---|---|---|
| | *USA Fab* | | 8/16/05 |
| EXTENDED BY | ADDRESS | | CHECK TOTAL |
| CHECKED BY | CITY | STATE | ZIP | LOT NUMBER |
| | | | | 56 BC112 |

| | DESCRIPTION | QUANTITY | PRICE | | | |
|---|---|---|---|---|---|---|
| 1 EQ | KEI Air filter system - Honging | 1 | | | | |
| 2 | loam cutting misswelding line | | | | | |
| 3 Supp TL | pc 50/ea #C-747-A E-7 glide | 11 | $100 | | | |
| 4 | bottles for shelf | | | | | |
| 5 Supp | Bag alum rivets | | | | | |
| 6 EQ | Blades for Honig. milling machine asst. | 210 | | | | |
| 7 TL WIP | Box ea. Spinkis form # us9.18 | 5 | $20 ea | | | |
| 8 TL WIP | " 2/ea " " " # us9.16 | 2 | $22 ea | | | |
| 9 TL WIP | " 2/ea " " " # us9.28 | 1 | $25 ea | | | |
| 10 | only Space Heater - Polmix # HO-152C | 1 | | | | |
| 11 | " Pro spinkis stand - no ID   See Picture | 29 | | | | |
| 12 EQ TL | MTS Snowylite snow blower, 10/33 | 1 | 375 | 33% | | |
| 13 | Molex punch press mot #1482  280  SN | 1 | | | | |
| 14 L EQ | only Honch. Steam Vac Dual V | 1 | 280 | 33% | | |
| 15 | mod # F2441-980  (New) | | | | | |
| 16 EQ TL | only Whirlpool Ele. Stove | 1 | 505 | 335 | 33% | |
| 17 | mod # RF375PXDW o | | | | | |
| 18 TL | only pr. us9.18 Spinkis Stands | 2 | 35 ea | $70 | | |
| 19 Supp | " Blueprint cabinet | 1 | $175 | 175 | | |
| 20 EQ LOS | " Forklift lifting Cage - Note - | 100 | 200 | | | |
| 21 | thrown out deltas - Count per insured | | | | | |
| 22 | bkts 48"x36" Yellow | | | | | |
| 23 EQ | Rotating work platform - Sarbi | 1 | | | | |
| 24 EQ | Mod PS-4  4000 lb cap | | | | | |

| SECTION | | | PAGE TOTAL | |
|---|---|---|---|---|
| Additions - Jack | | | | |

| ACCEPTED FOR G.F.I. BY | ACCEPTED FOR INSURED BY | PAGE |
|---|---|---|

#9

INVENTORY

Garvin-Fram, Inc.

37130

| LISTED BY | INSURED | | | | | DATE 9/16/05 |
| EXTENDED BY | ADDRESS | | | | | CHECK TOTAL |
| CHECKED BY | CITY | | STATE | ZIP | | LOT NUMBER |

U.S.A. Fab.

| | DESCRIPTION | QUANTITY | PRICE | | | | |
|---|---|---|---|---|---|---|---|
| 1 EQ | only clinch machine - shop built | 1 | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |

| SECTION | | | | PAGE TOTAL | |
| ACCEPTED FOR G.F.I. BY | | ACCEPTED FOR INSURED BY | | | |

JUDGE ST. EVE
MAGISTRATE JUDGE COX
AEE

# Exhibit A

# Part 3

PERSONAL PROPERTY INVENTORY

| ITEM NO. | ITEM | REPLACEMENT COST | DEPRECIATION | ACTUAL CASH VALUE |
|---|---|---|---|---|
| | **OFFICE AREA** | | | |
| 1 | Desks - 5@$299 | $1,495.00 | 33.00% | $996.72 |
| 2 | Computer Systems Complete - 3@$795 (various makes) | $2,385.00 | 33.00% | $1,590.00 |
| 3 | Fax Machine | $120.00 | 33.00% | $80.00 |
| 4 | Telephone - 5@$99 (5 line) | $495.00 | 33.00% | $330.01 |
| 5 | Refrigerator - small | $40.00 | 33.00% | $26.66 |
| 6 | Microwave | $110.00 | 33.00% | $73.33 |
| 7 | Steel File Cabinet (6') | $289.00 | 33.00% | $192.67 |
| 8 | Chairs – swivel - 5@$99 | $495.00 | 33.00% | $330.01 |
| 9 | File Cabinets - 10@$119 | $1,190.00 | 33.00% | $793.37 |
| 10 | Conference Table | $230.00 | 33.00% | $153.33 |
| 11 | Chairs - 4@$99 | $396.00 | 33.00% | $264.00 |
| 12 | Misc. Supplies | $250.00 | - | $250.00 |
| | TOTAL: | $7,495.00 | | $5,080.10 |

USA-FAB

Equipment & raw material and/or by racks where roof/wall collapsed & were thrown out by demolition contractor.

| ITEM NO. | ITEM | REPLACEMENT COST | DEPRECIATION | ACTUAL CASH VALUE |
|---|---|---|---|---|
| 1 | 10, 12, 14, 16 & 18 gauge stainless steel sheets & mild cold rolled steel<br>4' X 8'<br>4'X10'<br>4'X12' | $7,200.00 | - | $7,200.00 |
| 2 | Approximately 60 sheets @$120<br>Press Brake Tooling - 9 sets | $7,750.90 | 20.00% | $6,200.72 |
| 3 | Pine Press Bender #2 - 7 sets<br>Mandrils (1)<br>Follow Bar (2)<br>Clamping Bar (3)<br>Radius Tooling (4) | $9,875.50 | 20.00% | $7,900.04 |
| 4 | Pines Bender 3T - 5 sets<br>Tooling | $3,450.00 | 20.00% | $2,760.00 |
| 5 | Richards Bender - 12 sets<br>Tooling | $2,495.59 | 20.00% | $1,996.47 |
| 6 | Strippet Custom 18/30 Tooling - Complete cabinet w/ 55 sets | $4,390.00 | 20.00% | $3,512.00 |
| 7 | Spot welder's tooling - 30 sets | $4,874.95 | 20.00% | $3,899.96 |
| | TOTAL: | $40,036.94 | | $33,469.19 |



THE
HARTFORD

April 11, 2008

<u>*Via Certified & Regular Mail*</u>
<u>*Return Receipt Requested*</u>

Mr. Timothy Okal
Spina, McQuire & Okal
7610 West North Avenue
Elmwood Park, Illinois 60707

RE:   Insured:       U.S.A. Fab, Inc.
      Claim No.:     YPX F 00023
      Policy No.:    83 SBA PP9791

Dear Mr. Okal:

This letter is directed to you as counsel for U.S.A. Fab, Inc. concerning the above captioned claim for property damages resulting from an explosion/fire that occurred on or about July 31, 2005 at 501 W. Algonquin Road, Mt. Prospect, IL. By this letter, the Hartford Casualty Insurance Company (The Hartford) hereby denies any and all liability to your client, U.S.A. Fab, Inc., for their insurance claim of loss resulting from the explosion/fire captioned above. This claim is specifically denied because the explosion/fire was not an accidental loss, but instead an intentional act that is specifically excluded under the policy for dishonest or criminal acts by an insured and further, because your client has breached specific terms and conditions of the policy captioned above regarding concealment, misrepresentation or fraud, and the duties in the event of loss or damage.

The policy of insurance captioned above contains the following exclusions, terms and conditions:

### SPECIAL PROPERTY COVERAGE FORM

B.   **EXCLUSIONS**

2.   We will not pay for loss or damage caused by or resulting from:

c.   **Dishonesty:** Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.



EXHIBIT
C

Mr. Timothy Okal
April 11, 2008
Page 2

> (1)    Acting alone or in collusion with others; or
>
> (2)    Whether or not occurring during the hours of employment.

All coverages of the policy subject to the following conditions:

### COMMON POLICY CONDITIONS

### C.    CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.    This policy;

2.    The Covered Property;

3.    Your interest in the Covered Property; or

4.    A claim under this policy.

### D.    EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

### E.    PROPERTY LOSS CONDITIONS

#### 3.    Duties In The Event of Loss or Damage

You must see that the following are done in the even to loss or damage to Covered Property:

g.    If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

i.    Cooperate with us in the investigation or settlement of the claim.

Mr. Timothy Okal
April 11, 2008
Page 3

It is the position of The Hartford that the explosion and fire loss is excluded from coverage pursuant to the exclusions set forth above since it was intentionally committed by Mr. Paulo Giovagnoli or someone at his direction and, as such, was a dishonest or criminal act committed by the owner and chief officer of the named insured, U.S.A. Fab, Inc.

Further, public policy prohibits insurance proceeds to an insured that has committed an intentional act of arson or other intentional criminal acts that have occurred in this loss. Moreover, it is the position of The Hartford that U.S.A. Fab, Inc., by and through Mr. Giovagnoli, breached the policy of insurance in violation of the conditions set forth above in that he concealed, made material misrepresentations or committed fraud in his Sworn Statement in Proof of Loss concerning the cause and origin of the loss, its sworn denial that the loss did not originate by any act, design or procurement on the part of your client, and in his statements concerning the circumstances of the loss. Finally, it is also the position of the Hartford that your client has breached conditions of the policy set forth above in his failure to submit to an examination under oath and his failure to produce and submit his books and records that were requested during the investigation of this claim concerning financial and business accounts and records within two years of this loss.    Consequently, as a result of the intentional loss, application of the exclusions and conditions which were breached by your client during the investigation and review of this claim, it is the position of the Hartford that your client has breached the above captioned policy of insurance and the claim is therefore denied.

The Hartford hereby rejects the Sworn Statement in Proof of Loss dated December 20, 2005 for the reasons stated above. Along with this letter, I am returning the rejected Proof of Loss to you.

Please be advised that if your client should pursue this claim further or to litigation, The Hartford shall not be limited by its defenses only to the grounds stated above, but instead shall reserve and avail itself of any and all additional defenses suggested by further investigation and/or discovery. Further, by sending this letter, The Hartford respectfully reserves all rights to assert such additional defenses.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance require this office advise you that if you wish to take this matter up with them, they maintain consumer divisions at 100 West Randolph Street, Chicago, Illinois, 60601 and 320 West Washington Street, Springfield, Illinois, 52767.

Mr. Timothy Okal
April 11, 2008
Page 4

Please be advised that nothing herein constitutes, nor should it be construed by you as a waiver of any rights or defenses which The Hartford Casualty Insurance Company now has or hereafter may have under said policy.

Sincerely,

The Hartford Casualty Insurance Company

By: _____
   Justin R. Hewitt

JRH/de

| SWORN STATEMENT IN PROOF OF LOSS | Business Personal Property Only | Claim Number 5093936 |
|---|---|---|
| | ~~Amount of Policy at Time of Loss~~ 1,000,000.00 | 83 SBA PP9791 Policy Number |
| | 05-06-2005 Date Issued | Illinois Agency at |
| | 05-06-2006 Date Expires | Ronald J. Fisher Assoc Agent |

To the __Hartford Casualty Insurance Company__

of __Hartford, CT__

At time of loss, by the above indicated policy of insurance you insured __U.S.A. Fab Inc.__

against loss by __all risks__ upon the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

1. **Time and Origin:** An __explosion__ loss occurred about the hour of _____ o'clock _____ M on the 7.31. day of 05. The cause and origin of the said loss were _____ __unknown to insured__

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: __Metal job shop and office__

3. **Title and Interest:** At the time of the loss the interest of your insured in the property described therein was __owner__. No other person or persons had any interest therein or incumbrance thereon, except: __none__

4. **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: __none__

5. **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, $1,000,000.00 as more particularly specified in the apportionment attached under Schedule "C" besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6. The Actual Cash Value of said property at the time of the loss was . . . . . . . . . . UNDETERMINED

7. The Whole Loss and Damage was . . . . . . estimated to be . . . . . . . . . $304,284.49

8. The Amount Claimed under the above numbered policy is /estimated to be . . . $168,716.80

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

State of __Illinois__

County of __Cook__

_____ Insured

Subscribed and sworn to before me this _____ 20 0 5

OFFICIAL SEAL
Mark Musick
Notary Public, State of Illinois
My Commission Expires 04/08/07

Notary Public

USA FAB

## STATEMENT OF LOSS

| ITEM NO. | ITEM | REPLACEMENT COST | ACTUAL CASH VALUE |
|---|---|---|---|
| 1 | Machinery & Equipment / per Kaufman - Worthen Machinery, Inc. | $157,775.00 | $36,275.00 |
| 2 | Total loss stock, raw materials, work in process, equipment, supplies & Finished goods (per Garvin Fram Inventory) | $98,977.55 | $93,892.51 |
| 3 | Office Furniture, equipment & supplies (see list – Garvin Fram missed this area) | $7,495.00 | $5,080.10 |
| 4 | Equipment & Raw materials on/by racks where roof/wall collapsed & thrown out by demolition contractor & not part of Garwin Fram Inventory | $40,036.94 | $33,469.19 |
| | TOTAL: | $304,284.49 | $168,716.80 |

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| U.S.A. FAB, INC. an Illinois corporation,<br><br>      Plaintiff,<br><br>    v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, a foreign corporation,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILED B - 15

2008 JUN 18 PM 3: 33

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

No. 08 L 5344

### NOTICE OF FILING

PLEASE TAKE NOTICE that on the 18 day of June 2008, we filed Hartford Casualty

Insurance Company's **Notice of Removal** of this matter to the United States District Court for

the Northern District of Illinois, Eastern Division, with the Clerk of the Circuit Court of Cook

County, Illinois, Law Division.

Respectfully submitted,

HARTFORD CASUALTY INSURANCE COMPANY

By: _____

Peter E. Kanaris
David E. Heiss
Michael A. Wax
FISHER KANARIS, P.C.
200 South Wacker Drive, Suite 2200
Chicago, Illinois 60606
312.474.1400
312.474.1410 (fax)
pkanaris@fisherkanaris.com
dheiss@fisherkanaris.com
mwax@fisherkanaris.com

1



EXHIBIT

B

## CERTIFICATE OF SERVICE

To:    Timothy H. Okal
       Spina, McGuire & Okal
       7610 W. North Avenue
       Elmwood Park, IL 60707

I, Michael A. Wax, state that on June ___18___, 2008, I served a copy of the foregoing Notice of Motion and **Notice of Removal** together with a copy of on counsel to whom it is addressed, at the address(es) thereon given, via first-class mail and also via facsimile.

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| U.S.A. FAB, INC. an Illinois corporation, | ) ) | |
| Plaintiff, | ) ) | **FILED: JUNE 19, 2008** |
| v. | ) ) ) | **08CV3518** No. **JUDGE ST. EVE** |
| HARTFORD CASUALTY INSURANCE COMPANY, a foreign corporation, | ) ) ) | **MAGISTRATE JUDGE COX** **AEE** |
| Defendant. | ) ) | |

### NOTICE OF FILING

PLEASE TAKE NOTICE that on the ___19th___ day of June 2008, we filed Hartford Casualty Insurance Company's **Notice of Removal** of this matter to the United States District Court for the Northern District of Illinois, Eastern Division, with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division.

Respectfully submitted,

HARTFORD CASUALTY INSURANCE COMPANY

By: _____/s/ Michael A. Wax_____
    Peter E. Kanaris
    David E. Heiss
    Michael A. Wax
    FISHER KANARIS, P.C.
    200 South Wacker Drive, Suite 2200
    Chicago, Illinois 60606
    312.474.1400
    312.474.1410 (fax)
    pkanaris@fisherkanaris.com
    dheiss@fisherkanaris.com
    mwax@fisherkanaris.com

1

## CERTIFICATE OF SERVICE

To:    Timothy H. Okal
          Spina, McGuire & Okal
          7610 W. North Avenue
          Elmwood Park, IL 60707

I, Michael A. Wax, state that on June $\underline{19^{th}}$, 2008, I served a copy of the foregoing Notice of Motion and **Notice of Removal** together with a copy of on counsel to whom it is addressed, at the address(es) thereon given, via first-class mail and also via facsimile.

_____ /s/ Michael A. Wax _____

2